16141, 16181.    CONTINENTAL TRUST CO. *v.* BANK OF
HARRISON; and *vice versa.*

1. The Bank of Harrison, on June 26, 1920, bought from the Continental Trust Company, for cash, a promissory note for the principal sum of $5,000, executed on June 26, 1920, by "The Cotton Warehouse Company," and payable sixty days after date to itself or order, and by it indorsed in blank, to which was attached as collateral security a promissory note executed by "The Ellis Cotton Company," payable to itself or order, and by it indorsed in blank. Attached to this collateral note, as collateral security, was a warehouse receipt of "The Cotton Warehouse Company," which represented that thirty-two bales of cotton marked "L. A. C." had been deposited in the warehouse of that company, and was in its actual possession at the time (to wit, June 26, 1920) when the Bank of Harrison bought the said note from the Continental Trust Company. *Held*, that under these facts there was an implied warranty by the Continental Trust Company that the thirty-two bales of cotton, described and symbolized by the warehouse receipt, were in existence and in the warehouse of "The Cotton Warehouse Company" on June 26, 1920.

Appeal and Error, 4 C. J. p. 72, n. 1.
Brokers, 9 C. J. p. 679, n. 40.
Damages, 17 C. J. p. 1062, n. 81.
Evidence, 22 C. J. p. 158, n. 53; p. 164, n. 76; p. 165, n. 87; p. 169, n. 34 New; p. 337, n. 59; p. 338, n. 60, 62; p. 986, n. 4; p. 987, n. 21; p. 1017, n. 88.
New Trial, 29 Cyc. p. 788, n. 3; p. 790, n. 8 New; p. 794, n. 36 New. Trial, 38 Cyc. p. 1339, n. 94; p. 1516, n. 57; p. 1693, n. 55; p. 1724, n. 88.
Warehousemen, 40 Cyc. p. 425, n. 15 New.

(a) Under the ruling and the facts stated above, where the Bank of Harrison brought suit against the Continental Trust Company for damages for a breach of an implied warranty, and alleged that the trust company warranted that the thirty-two bales of cotton were in existence and in the custody of the warehouseman on June 26, 1920, and that the trust company "breached such warranty, . . for that none of such cotton was in existence nor in the custody of said warehouseman" on June 26, 1920, and where the evidence failed to show affirmatively that such cotton was not in existence, or that it was not in the custody of the warehouseman, but where the evidence showed that even if the cotton had been in the custody of the warehouseman, it could not have been delivered to the holder of the warehouse receipt for the cotton, because the receipt did not bear the tag numbers, which were the only means of identifying the cotton, the plaintiff, under its pleadings, was entitled to recover.

2. Parol evidence as to the existence of notes, checks, receipts, books, letters, and the like, or as to their location, size, length, quantity, etc., but not undertaking to disclose the material contents thereof, is not subject to the objection that the writings themselves would be higher proof. Where such writings are only collaterally in point, and are in no sense the foundation of the action or defense, even their contents may sometimes be shown by parol without accounting for the non-production of the papers themselves. Fisher v. Jones, 93 Ga. 717 (2) (21 S. E. 152); Kennedy v. Walker, 156 Ga. 711 (2) (120 S. E. 105); Armour v. Bluthenthal, 9 Ga. App. 707 (2) (72 S. E. 168); Borders v. City of Macon, 18 Ga. App. 333 (1) (89 S. E. 451).

3. Parol evidence of an accountant or other person, to the effect that he made an audit of the books, records, and accounts of a corporation, is admissible, without a production of the documents themselves, and over the objection that such documents would constitute higher proof.

4. The issue being whether certain warehouse receipts for cotton were spurious at the time of their transfer by the defendant to the plaintiff, it was competent for a person to testify that about thirty days subsequent to the transfer he went to the warehouse and made a thorough examination of the cotton stored therein, and never found a bale corresponding with the receipts in controversy, and that no such cotton was there.

5. Evidence relating to the questions being tried by the jury, and bearing upon them directly or indirectly, is always relevant. Civil Code (1910), § 5744. If the evidence offered by a party is of doubtful relevancy, it should nevertheless be admitted and its weight left to the jury. Dalton v. Drake, 75 Ga. 115 (3); Purser v. McNair, 153 Ga. 405 (2), 411 (112 S. E. 648). Even where irrelevant evidence is admitted over timely objection, it affords no cause for a new trial, unless the nature of the evidence is such as reasonably to prejudice the rights of the objecting party. Central Ga. Transmission Co. v. Storer, 17 Ga. App. 55 (85 S. E. 498).

6. The defendant corporation had taken the deposition of its president as a witness for itself in another case involving similar transactions. Upon the trial of the instant case the plaintiff introduced in evidence a part of that deposition, which was in the nature of an admission

relevant to the issues then being tried by the jury. The defendant's counsel thereupon insisted on reading to the jury the entire deposition of its president, without the consequences attendant upon the introduction of evidence by the defendant. The court ruled that the defendant might introduce any part of the deposition it saw fit to offer as the testimony of its own witness, but could not get before the jury as evidence for the plaintiff any part of the deposition other than what the plaintiff had elected to offer. In the 34th ground of the motion for a new trial that ruling is assigned as error, and the entire deposition of the witness is set out, but the admitted and excluded parts of it are in no way separated or indicated. The motion recites that "plaintiff's counsel read the portions of the deposition which appear in the brief of evidence;" but, without a resort to that brief, it can not be ascertained what part of the deposition was admitted, and, without a comparison of that part with the whole, it can not be ascertained which part of the deposition was excluded. A resort to the brief of evidence is, therefore, necessary to a proper decision of the question sought to be presented. *Held:* Under repeated rulings of this court and of the Supreme Court, such a ground of a motion for a new trial will not be passed upon. See 1 Enc. Dig. Ga. Rep. (Cum. Supp.), 753 (2) et seq.

7. Where a part of a petition or of a plea is stricken by amendment, the stricken part may, if pertinent to any issue remaining in the case, be offered in evidence; but, unless so offered and admitted in evidence, it is not evidence for the consideration of the jury or proper matter for argument of counsel, save only where the amendment is made after the evidence is closed. *Lydia Pinkham Medicine Co.* v. *Gibbs,* 108 *Ga.* 138 (33 S. E. 945); *Ala. Midland Ry. Co.* v. *Guilford,* 114 *Ga.* 627 (40 S. E. 794). A different rule is applicable to parts of pleadings that are not stricken. Civil Code (1910), § 5775.

8. The charge that "this petition is not in evidence and will not be regarded by you as evidence" affords no cause for a new trial, under the facts of this case, the defendant claiming no beneficial admission therein, and the gravamen of the complaint being that stricken portions of the petition not offered in evidence were thereby eliminated from the consideration of the jury. *Cooley* v. *Abbey,* 111 *Ga.* 439 (3) (36 S. E. 786).

9. Under the facts of the case it was not erroneous to instruct the jury as follows: "In arriving at a verdict, the jury will consider the facts proved, and sometimes, in the absence of counter evidence, might infer the existence of other facts reasonably and logically consequent thereon."

10. In view of the issues and evidence in this case, it was not erroneous to instruct the jury as follows: "If the notes are of some value, the measure of damages is the difference between the price paid and the actual value. Now, if you find that the receipts were spurious, if you find that on the days of the alleged purchase of such cotton paper, the cotton referred to in said receipts was not actually in the warehouse to respond to such receipts, and that on that account plaintiff sustained loss, you should find a verdict for the plaintiff for the value of such cotton, not exceeding the face amount of the notes, diminished by the value of the cotton notes without such cotton security."

11. Error is assigned on the following charge: "It is claimed that there is evidence in this case that such notes, without the cotton, were worth three and five one hundredths cents on the dollar, or about that. You are not bound by that estimate, but should deduct from the damages, if you find any, if you award such damages, the value of such notes unsecured by cotton, and you may, in your discretion, add additional damages calculated on a seven per cent. basis from the dates of the alleged breach of warranty to the present time." The ground upon which this instruction is complained of is that the petition alleged the notes to be worth five per cent. of their face value, and this charge authorizes a less valuation than the plaintiff itself claimed. *Held:* The charge was applicable to the evidence, and the verdict does not exceed the allegations of the plaintiff's petition, or the amount authorized by the uncontradicted evidence. Under the facts of the case such a charge affords no cause for a new trial.

12. For no reason assigned was it erroneous to instruct the jury as follows: "It is claimed that the evidence in this case tends to show that the notes involved in this case,—that is, the former notes purchased by the plaintiff from the defendant,—were exchanged for these notes sued on. The value of those former papers was prima facie the full amount of their face value, and if the plaintiff paid full value therefor, you would be authorized to accept that valuation of the former notes in determining what the plaintiff paid for the notes in evidence before you." See *Savannah Trust Co.* v. *National Bank of Savannah,* 16 *Ga. App.* 706 (2), 720 (86 S. E. 49).

13. For no reason assigned was it erroneous to instruct the jury as follows: "If one person sells cotton paper, or other property, to another party, he would not be heard to say that he was a broker, unless the purchaser knows that he was acting as broker. The Continental Trust Company can not defend this case on the ground that it acted as a broker, because there is no evidence of that in this case, nor is there any evidence that the plaintiff knew that the trust company assumed to act as a broker."

14. For no reason assigned was it erroneous to instruct the jury as follows: "Some evidence has been allowed to go to the jury in this case on the condition of this warehouse, that is to say, as to cotton that was in it on dates other than the dates embraced in this transaction; but the question you are to determine is: What was the situation there at the time of this alleged purchase and sale of these notes and warehouse receipts? And you will only consider the situation before or after that date as illustrative, if it is, of the situation at the time of this transaction." In the absence of an appropriate written request for additional instructions upon the matter here in point, the charge as given was sufficiently full, fair, and specific.

15. The record as a whole discloses no reversible error.

DECIDED DECEMBER 14, 1926. REHEARING DENIED JANUARY 11, 1927.

Complaint; from Fulton superior court—Judge Ellis. December 6, 1924.

The Bank of Harrison sued the Continental Trust Company, and in its petition alleged, among other things, the following facts:

"On or about June 26, 1920, defendant sold and delivered to plaintiff, for the consideration of $5,000 cash to it paid by plaintiff, that certain promissory note, bearing date June 26, 1920, executed by The Cotton Warehouse Company for the principal sum of $5,000, payable sixty days after date to itself or order, and by it indorsed in blank, to which note was attached as collateral security, one note of Ellis Cotton Company, payable to itself or order, and by it indorsed in blank, which collateral note for the principal sum of $5,000 purported to be secured by thirty bales of cotton marked 'E. L L S Various,' and symbolized by warehouse receipt No. 1380 of The Cotton Warehouse Company attached thereto, which warehouse receipts represented that said bales of cotton had been deposited in the warehouse of said warehouse company, and further represented that said cotton was actually in the possession of said warehouse company at the time plaintiff so purchased said commercial paper." After alleging similar transactions, involving various amounts, and after more fully describing the warehouse receipts in question, the petition further alleged: "And defendant by such several sales warranted to plaintiff that the several bales of cotton hereinbefore described and symbolized by said several warehouse receipts were in existence and in the custody of said warehouseman at the respective dates on which same and said notes were purchased by plaintiff. Yet defendant breached said warranty as to each and every of said bales of cotton, for that none of such cotton was in existence nor in the custody of said warehouseman on the dates aforesaid nor at any time thereafter. The value of said commercial paper depended upon the existence of such cotton and the custody thereof by said warehouseman, for such cotton, if it had been in existence, and in the custody of said warehouseman, would have exceeded in value during the times aforesaid the face amount of the notes purporting to have been secured thereby, and at the several maturities of said notes so purchased by plaintiff, the maker thereof, to wit, The Cotton Warehouse Company, was insolvent, and from that time has been and now is insolvent, and the maker of some of said collateral notes, to wit, Ellis Cotton Company, was at such times insolvent, and the maker of all other of such collateral notes, to wit, E. S. Formby, was at such times and now is a nonresident of the State of Georgia, residing in the State of Alabama. Said

notes so purchased by plaintiff were not and never have been worth, without the security of such cotton, but five per cent. of their face value, said notes aggregating a total face value of $30,-800; whereby plaintiff lost 95% of that sum, to wit: $28,260 with interest. By reason of the foregoing breaches of warranties defendant has damaged plaintiff in the sum of $28,260, together with interest on 95% of the several face amounts of said notes from their respective maturities until paid at 7% per annum." By amendment to the original petition, striking the allegations as to some of the notes and warehouse receipts there referred to, the plaintiff reduced the aggregate amount of its claim from the figures shown above to $18,800. The warehouse receipts were identical in their formal parts, and one of them, indorsed by Ellis Cotton Company, was in full as follows: "The Cotton Warehouse Company, Inc. Received from Ellis Cotton Company one hundred (100) bales of cotton to be delivered only upon return of this receipt properly indorsed. This cotton is received and this receipt issued for the purpose of making same readily and conveniently available as collateral security for a loan. No. of Bales 32, Marks LAC No.      [Signed] The Cotton Warehouse Company by T. F. Ellis, Secty. & Treas." The defendant's answer was a mere denial of the material allegations of the plaintiff's petition. Upon the trial the plaintiff introduced evidence tending to prove its case as laid in the petition; the defendant offered no evidence, and the jury returned a verdict in favor of the plaintiff for $18,800. The defendant moved for a new trial on the usual general grounds and sixty-five additional grounds, and now excepts to the judgment overruling the motion. By a cross-bill of exceptions the plaintiff excepts to a ruling excluding from the jury certain additional evidence offered.

*Anderson, Rountree & Crenshaw, Bryan & Middlebrooks,* for plaintiff in error.

*J. K. Jordan,* contra.

LUKE, J. (After stating the foregoing facts.)   1. The Court of Appeals certified to the Supreme Court the following questions: "1. The Bank of Harrison, on June 26, 1920, bought from the Continental Trust Company, for cash, a promissory note for the principal sum of $5,000. The note was executed on June 26, 1920, by 'The Cotton Warehouse Company,' and was payable sixty

days after date to itself or order, and by it was indorsed in blank. Attached to the note as collateral security was a promissory note executed by 'The Ellis Cotton Company,' payable to itself or order, and by it indorsed in blank. Attached to the Ellis Cotton Company note, as collateral security to it, was a warehouse receipt of 'The Cotton Warehouse Company,' which represented that thirty-two bales of cotton marked 'L. A. C.' had been deposited in the warehouse of 'The Cotton Warehouse Company,' and that this cotton was in the actual possession of said warehouse company at the time (to wit, June 26, 1920·) when the Bank of Harrison bought the aforesaid note from the Continental Trust Company. Under these facts, was there an implied warranty by the Continental Trust Company that the thirty-two bales of cotton, described and symbolized by the warehouse receipt, were in existence and in the warehouse of 'The ·Cotton Warehouse Company' on June 26, 1920?

"2. If an affirmative answer is given to the foregoing question, then an answer to the following question is requested: Under the facts stated in the previous question, where the Bank of Harrison brings suit against the Continental Trust Company for damages for a breach of an implied warranty, and alleges that the trust company warranted that the thirty-two bales of cotton were in existence and in the custody of the warehouseman on June 26, 1920, and that the trust company 'breached such warranty, . . for that none of such cotton was in existence nor in the custody of said warehouseman' on June 26, 1920, and where the evidence fails to affirmatively show that such cotton was not in existence, or that it was not in the custody of the warehouseman, but where the evidence does show that even if the cotton had been in the custody of the warehouseman, it could not have been delivered to the holder of the warehouse receipt for the cotton, because the receipt did not bear the tag numbers, which were the only means of identifying the cotton, is the plaintiff under its pleadings entitled to recover?"

Both of these questions were answered in the affirmative by a majority of the Supreme Court. For full opinion see 162 *Ga.* 758 (134 S. E. 775). This ruling disposes of the controlling issue, and, under it and the evidence adduced on the trial, the verdict for the plaintiff was demanded.

2-15. The rulings stated in headnotes 2 to 15 inclusive need no elaboration. The grounds of alleged error not covered by them are in part too defective to present any question for decision by this court, and none of these grounds are possessed of sufficient merit to require further discussion here.

*Judgment affirmed on main bill; cross-bill dismissed. Broyles, C. J., concurs. Bloodworth, J., absent on account of illness.*