An automobile dealer who furnishes to another an automobile to be driven by the latter for demonstration purposes is liable to a third person, whom the dealer knew would be in the vicinity of its use, for damages resulting from a latent defect therein which the dealer could have discovered by the exercise of ordinary care, where such defect is of such nature as to make the automobile, for the purpose furnished, a dangerous instrumentality as to such third person, if the third person could not have discovered the defect by the exercise of ordinary care and could not have avoided the consequences thereof by the exercise of ordinary care.
 DECIDED JULY 9, 1941. REHEARING DENIED JULY 24, 30, 1941.
W. O. Holt sued Eastern Motor Company for damages for personal injuries. The original petition alleged: "1. That defendant Eastern Motor Company is a corporation with its principal office and place of business in said county and is engaged in buying and selling automobiles for profit. 2. That on the afternoon of March 18, 1940, at about the hour of 5:30 o'clock, the defendant's salesrooms and place of business was open to the public and plaintiff entered the same on business, plaintiff being then and there interested in purchasing a used automobile. 3. That plaintiff entered the defendant's used-car department and was looking at some automobiles when plaintiff was approached by Mr. Gus Jarrett, employee of defendant and in charge of the used-car department at the time. 4. That plaintiff, in company with said employee, walked over and entered an automobile of the defendant on the sidewalk adjoining the used-car department, and while sitting there said employee turned on the radio in said car. 5. That while plaintiff was thus seated in said automobile with the employee *Page 503 
a colored man came into the used-car department, and said employee being interested in a program on the radio requested that plaintiff go and see what the man wanted. 6. That in a few minutes said employee Jarrett came over and took the man in charge, who was a customer interested in purchasing an automobile. 7. That said Jarrett finally interested the customer in an old model Dodge automobile, and said Jarrett being anxious to make a sale, he insisted and finally prevailed upon the customer to drive the automobile for demonstration purposes. 8. That said employee in persuading and inducing the customer to drive the automobile acted in accordance with a well-established custom of the defendant in its business, the purpose and object of which is to make sales for its benefit, interest, and profit. 9. That having induced the customer to drive the automobile, the said employee Jarrett then turned to the plaintiff, and calling plaintiff by name said, `Go with him while he tries out the car.' 10. That said employee requested plaintiff to accompany said customer because plaintiff was well known to and trusted by both the employee and defendant; that while plaintiff had never done any business with the defendant, plaintiff's father had purchased a number of automobiles from it and transacted business with defendant for several years, and plaintiff had on many other occasions driven defendant's automobiles and had been out with customers of defendant upon request of its employees as in this case, with the full knowledge, consent, and approval of the president and owner of defendant, Mr. Leon Ferst. 11. That in trying to make a sale of the automobile the employee's demeanor toward said customer was friendly and affable, the employee addressing the customer by his first name, and plaintiff was thus led to believe and did believe that the customer was well known to said employee, and in consequence of the facts aforesaid plaintiff agreed to accompany defendant's customer while he drove the automobile. 12. That plaintiff, in company with defendant's customer, with the latter operating the automobile, traveled about one mile outside the city limits of Augusta, and was returning to the city by a highway which comes into and forms the southern terminus of a street known as East Boundary, and during which time the operator of the automobile drove at a very slow rate of speed, approximately fifteen or twenty miles per hour, and plaintiff observed no visible sign that the operator was unable *Page 504 
to safely operate an automobile. 13. That having reached a point near the city limits as aforesaid, the operator of said automobile speeded the same up to about fifty miles per hour, whereupon he lost complete control of the automobile and the same began to swerve and lunge from one side of the highway to the other and finally left the highway and plunged head-on into a deep ditch and over against a large tree with terrific impact, demolishing the automobile and inflicting upon plaintiff serious, painful, and permanent injuries from which he will never recover. 14. That said highway along where the operator of said automobile lost control of and wrecked the same, is a perfectly smooth, level, and improved highway approximately thirty feet wide and the proximate cause of said casualty and plaintiff's injuries was the carelessness and negligence of the defendant, acting through its employee, as will hereinafter appear. 15. That plaintiff is now informed and alleges that the name of defendant's said customer was one Sam Danforth; that said Danforth was at the time entirely unknown to the defendant or its said employee, Jarrett; that said Danforth at the time had never owned an automobile and had never driven an automobile before except a T-model Ford about ten or twelve years prior thereto; that said Danforth had no license to operate an automobile and that he was wholly untrained, unskilled, and an unfit person to operate said automobile with any degree of safety. 16. That said Dodge automobile delivered over to said Danforth was an old worn car, and especially the steering wheel and connecting gears, which were so worn and defective that the same would turn around to a position of about one fourth beyond normal when steering the automobile, and said automobile in the hands of said Danforth was and became an extreme dangerous instrumentality and agency of destruction and which seriously endangered the life of the plaintiff. 17. That the defendant knew of said dangers and that plaintiff's life would be endangered and imperilled by riding with said Danforth in said defective automobile, or by the exercise of ordinary care and diligence defendant should have known the same, and the defendant's negligence and carelessness was the proximate cause of said casualty and plaintiff's injury and damage; in that (a) the defendant acting through its employee persuaded and induced the customer to drive said defective automobile not knowing or inquiring as to whether he could operate an automobile or *Page 505 
had a license to operate one; (b) the defendant induced said customer to drive said automobile and failed to inform either him or the plaintiff as to the defective and dangerous condition of said steering wheel; (c) the defendant induced a customer and colored man who was entirely unknown to the employee or defendant to drive said automobile without making any inquiry as to who he was, where he was from, or the character of the person being dealt with; (d) the defendant acting through its employee led plaintiff to believe that the said Danforth was known to defendant, and plaintiff was thereby misled into getting in said automobile and position of peril and danger; (e) the defendant, acting through its said employee, put plaintiff in said position of peril and danger, in its automobile and its place of business while plaintiff was an invitee therein on business, and the acts of said Danforth were the acts of the defendant; (f) the defendant, acting by and through its said employee, caused plaintiff to be placed in said position of peril and danger in its place of business for the purpose of protecting and safeguarding its property against a person of whom they knew nothing, and the defendant under the facts and circumstances of the case failed to exercise ordinary care and diligence for the safety of the plaintiff, who under the law was entitled to such protection while in defendant's place of business. 18. That the said Danforth was persuaded and induced to drive said automobile for the purpose of making a sale, and for the sole benefit and interest of the defendant, and in driving and demonstrating said automobile, the said Danforth became and was the agent of the defendant, and the defendant is liable for the acts of said Danforth as to this plaintiff. 19. That plaintiff at all times mentioned exercised due care and caution for his own safety, and plaintiff did not know and was unable to discover his position of peril until the said Danforth speeded up said automobile and lost control of the same as aforesaid, after which it was impossible for plaintiff to escape from said automobile. 20. Plaintiff further shows that at the times mentioned and for some years prior thereto he was regularly employed and held a lucrative position with the Sibley Mfg. Company, and that there was never at any time any purpose or intention, either express or implied, on the part of plaintiff or the defendant or its employees that plaintiff was to or should receive anything or any remuneration or thing of value for riding with its customer or customers, *Page 506 
and plaintiff accompanied and rode with the defendant's customer solely as a passenger of the defendant and for its sole benefit."
The defendant filed the following demurrers to the original petition: "1. Because said petition does not set forth any cause of action against this defendant. 2. Because said petition does not set forth any cause of action against this defendant because it appears from the allegations thereof that the plaintiff was a mere volunteer. 3. Because said petition does not set forth any cause of action against this defendant because it does not appear from the allegations of paragraph 4 or elsewhere in plaintiff's petition whether or not plaintiff had finished his mission of looking at the used automobiles of this defendant before entering the automobile on the sidewalk adjoining the used-car department. 4. Because said petition does not set forth any cause of action against this defendant because it is not alleged in paragraph 14 or elsewhere in said petition the name of the employee of this defendant whose carelessness and negligence resulted in the injuries to the plaintiff. 5. Because said petition does not set forth any cause of action against this defendant because the allegations of paragraphs 17 (e) and (f) are conclusions of the pleader, unsupported by and contrary to the other facts alleged, and should be stricken. 6. Because said petition does not set forth any cause of action against this defendant because the allegations of paragraph 18 of plaintiff's petition are conclusions of the pleader, unsupported by and contrary to the other allegations of said petition which show that the said Danforth was not the agent of this defendant, for whose acts this defendant is liable, but that the said Danforth was a prospective customer, and said paragraph should be stricken. 7. Because said petition does not set forth any cause of action against this defendant because the allegations of paragraph 18 of plaintiff's petition are conclusions of the pleader, unsupported by and contrary to the other allegations of said petition which show that the said Danforth was not the agent of this defendant, for whose acts this defendant is liable, but that the said Danforth was a prospective customer, and said paragraph should be stricken. 7. Because said petition does not set forth any cause of action against this defendant because the concluding clause of paragraph 20 of plaintiff's petition is a conclusion of the pleader, unsupported by and contrary to the other allegations of plaintiff's petition, and should be stricken for the reason that the plaintiff was not a passenger of this defendant but was a mere volunteer."
The plaintiff filed the following amendment: "By adding to and at the conclusion of paragraph 10 of his original petition the following allegations as paragraph 10a, to wit: 10a. That the said Jarrett, employee of the defendant was in all respects acting *Page 507 
strictly in accordance with the said established practice and custom of the defendant, and by which the defendant ratified [any] acts and conduct of its employee. By adding to and at the conclusion of paragraph 18 of his petition the following allegations as paragraph 18a, to wit: 18a. That plaintiff at all times herein mentioned was in the defendant's place of business as an invitee, and was placed in said position of peril and danger by the defendant while at the defendant's place of business as an invitee therein on business, and said negligent acts of the defendant in so placing plaintiff in said position of peril and danger while in its place of business was the proximate cause of plaintiff's injuries and damages sustained." The demurrers were renewed to the petition as amended and the court sustained them and dismissed the petition as amended. The exception is to this judgment.
This petition does not set forth a cause of action on the theory that Danforth was an agent of the defendant.Harris v. Whitehall Chevrolet Co., 55 Ga. App. 130
(189 S.E. 392); McDaniel v. Jones, 58 Ga. App. 495
(199 S.E. 233); Cantrell v. Hertz Drivurself Stations, 40 Ga. App. 840
(151 S.E. 694). Nor on the theory that the plaintiff was an "invitee" of the defendant as the legal term is generally understood, for the reason that the petition does not allege any facts sustaining such a theory. At the most, the defendant's "invitation" to the plaintiff to ride with the prospective purchaser was no more than a suggestion, and presents the same legal status as if the prospective purchaser had invited the plaintiff with the defendant's knowledge and consent. However, the petition does state a cause of action on another theory. The relationship between the defendant and Danforth was that of bailor and bailee, in which each had a legal interest. It was the defendant's duty not to turn over to Danforth an automobile which was inherently dangerous because of a latent defect of which it actually knew or which it could have discovered by the exercise of ordinary care, and which Danforth could not have discovered by the same degree of care, and the effects of which negligence he could not have avoided by such care. This duty extended also to third persons whom the defendant should have anticipated might reasonably be injured by its failure in such duty. The scope of this duty extended to and included the plaintiff who was a guest of Danforth. *Page 508 
Whether the defendant should have anticipated that he might invite somebody to ride or not, the defendant actually knew that the plaintiff was going to ride with him as a guest. "If the bailment is a lucrative one, the obligation by which his liability to third persons is tested may include a duty to exercise reasonable diligence or ordinary care to see that the instrumentality is in a reasonably safe condition to avoid injuries to such persons, and it has been held that he is required, in the exercise of such diligence, to inspect the machine to the end that the danger may not arise, and to make such simple and available tests as to its condition as the intended use would suggest to sensible and right-minded persons." 6 Am. Jur. 404, § 317; Parker v. Loving, 13 Ga. App. 284
(79 S.E. 77); NuGrape Bottling Co. v. Knott, 47 Ga. App. 539
(171 S.E. 151). In 2 Restatement of the Law of Torts, 1064, § 392, it is stated: "One who supplies directly or through a third person a chattel to be used for supplier's business purposes is subject to liability to those for whose use the chattel is supplied, or to those whom he should expect to be in the vicinity of its probable use, for bodily harm caused by the use of the chattel in the manner for which and by persons for whose use the chattel is supplied: (a) if the supplier has failed to exercise reasonable care to make the chattel safe for the use for which it is supplied." See 12 A.L.R. 795; Collette v.
Page, 44 R.I. 26 (114 A. 136, 18 A.L.R. 74); Wharton on Negligence (2d ed.), § 435.
The petition does not allege facts sufficient to support the theory that the defendant in effect represented that Danforth was a competent driver. The fact that Danforth did not have a driver's license is not indicative of negligence. 16 A.L.R. 1117. The defendant would not be liable for the negligence of Danforth in the absence of an allegation that it knew or had reason to believe that he was an incompetent driver. However, the plaintiff would not be barred by Danforth's negligence if the negligence of the defendant contributed to or constituted the proximate cause of the injury. In 2 Restatement of the Law of Torts, 1272, § 490, it is stated: "A passenger or guest in a vehicle is not barred from recovery for harm resulting from the negligence of a third person by the contributory negligence of his carrier or host." Accordingly, the petition set forth a cause of action for the negligence of the defendant in furnishing to Danforth an automobile which by the exercise of *Page 509 
ordinary care defendant should have ascertained was in such a defective condition that it would probably injure Danforth or any person in the vicinity of its use by him. The court therefore erred in sustaining the demurrers and in dismissing the petition.
Judgment reversed. Stephens, P. J., and Sutton, J., concur.