43719.   YALE & TOWNE, INC. v. SHARPE et al.

Argued June 5, 1968—Decided September 3, 1968—
Rehearing denied October 9, 1968—

*Peek, Whaley, Blackburn & Haldi, J. Corbett Peek, Jr., Glenville Haldi, Gambrell, Russell, Moye & Killorin, Charles A. Moye,* for appellant.

*Westmoreland, Hall & O'Brien, Harry P. Hall, Jr., Donald E. O'Brien, P. Joseph McGee, Neely, Freeman & Hawkins, Joe C. Freeman, Jr.,* for appellees.

DEEN, Judge. ■ *Was the court in error in instructing the jury that Ogden was the agent of Yale & Towne under the evidence in this case?* The "dealer selling agreement" specifies that Ogden is an independent contractor with a franchise to sell the manufacturer's equipment, but there are nevertheless many attributes of agency embodied in the contract, which, however, is not controlling here. The contract reserves to Yale & Towne the right to sell direct to certain nationwide corporations, among which it appears from the evidence General Motors was one, but this also is not definitive. The particular truck involved was furnished directly by the manufacturer to General Motors for temporary use without prior request by or notice to Ogden because of delays in delivery on orders placed through Ogden. Yale & Towne thereafter requested Ogden to repair the truck if called upon to do so "as I would a rental or truck that was purchased by General Motors." There is no duty included in the dealer selling agreement to repair equipment loaned by the manufacturer direct to customers. Additionally, Mr. Ogden (sole owner of the Kerr Corporation) testified that Yale & Towne retained the control of its method and manner of making repairs, conducted training programs for this purpose several times a year, had the right to require the discharge of Ogden employees for deficiencies in the service department, and exercised this right on occasion by recommending discharge which Ogden complied with. On cross examination he was asked: "Q. So, as I understand it, what you are saying about Yale & Towne having control over your business . . . they are interested in your getting a satisfactory result with the customer? A. Right. Q. How you get that result is left up to you, isn't it? A. And to their supervision, to conform, as I say, with the procedures that's outlined by them for the mechanics to do the work on the lift trucks." Although the initial order was placed

with Yale & Towne through Ogden, Yale & Towne entered into direct negotiations with General Motors in the course of which it agreed to send them a used truck from its own plant and notified Ogden this had been done; Ogden also was notified to make repairs on the truck (whether specifically, or because as a matter of custom it made repairs in such instances is not clear) and Ogden in so doing acted as the agent of Yale & Towne in repairing a vehicle belonging to that manufacturer for the use of its customer. The fact that under its selling agreement Ogden had a general obligation to provide "at a competitive charge to the customer, all other services which may be required to accord the customer maximum satisfaction from the products," applying the *ejusdem generis* rule to the contract generally and § 11 in particular, refers primarily to products purchased by customers, which this was not, and does not exclude a situation where Ogden repaired a truck belonging to the manufacturer. This is not holding that, under the dealer's selling agreement in connection with the practice of Yale & Towne of training, supervising, and if necessary causing mechanics to be discharged, the contract itself would not constitute an agency agreement insofar as the servicing facilities are concerned, but it is a holding that if the designation of Ogden as an independent contractor rather than an agent might otherwise create a jury question on agency as to the repair of trucks sold by Ogden as a dealer, it would not do so when the contract does not refer to trucks owned by Yale & Towne and loaned by it on a temporary basis.

The discussion of agency relationship has been pursued because it is relevant to certain special grounds of the motion for new trial which can most readily be adjudicated in this manner.

■ Exception is taken to an instruction that "R. S. Kerr & Co. d/b/a Ogden Equipment Company, was the agent of Yale & Towne insofar as this particular item of equipment is concerned." "When a fact is proved by undisputed evidence, it is never error for a trial judge to assume or intimate that the fact is proved." *Goldstein v. Karr,* 110 Ga. App. 806, 809 (140 SE2d 40). It thus becomes unnecessary to consider whether such an instruction could in any event be harmful, where its purpose was to inform the jury that if they found there was negligence

on the part of Ogden in repairing the truck and returned a verdict against Ogden it would be necessary also to return a verdict against Yale & Towne, since Ogden being an agent, any negligence by it would be imputable to its principal, and that a verdict against Ogden alone would not be permitted to stand, and where as a matter of fact the jury by finding in favor of Ogden under these instructions necessarily found that the injuries were not due to negligence in repairing the vehicle. The verdict, however, does amount to a clear finding that the jury did not consider negligent repair or failure to repair to be a cause of the injury.

■ Complaint is made of the court's charge on *Code* § 12-204: "The obligations of the bailor of things are, . . . to keep the thing in suitable order and repair for the purposes of the bailment" on the ground that it had no duty to repair, nor could it be liable for any defect, in the absence of notice, and there is no evidence that Yale & Towne was notified of the complaints and subsequent attempts at repair being made by Ogden. Notice to the agent is, of course, notice to the principal. *Code* § 4-309; *Bean v. Barron*, 176 Ga. 285 (2) (168 SE 259). Ogden in making the repairs was acting as the agent of Yale & Towne on whom the duty devolved. Additionally, again, it is obvious that the jury found the defective condition of the truck as delivered was the proximate cause of the injury. In *Parker v. G. O. Loving & Co.*, 13 Ga. App. 284, 286 (79 SE 77), the court said of *Code* § 12-204: "Here, therefore, is a statutory declaration that due care on the part of the bailor requires him to examine the thing bailed for the purpose of seeing that it has no hidden defects which would render it unsuitable for the purposes for which it was hired." This places the burden on the bailor in the first instance to ascertain, under the last clause of *Code* § 12-204, "that the thing bailed is free from any secret ·fault rendering it unfitted for the purposes for which it is hired." Actual knowledge of the defective condition is not a necessary ingredient of the plaintiff's cause of action if, as here, it is in fact defective at the time of the bailment. *Southeastern Air Service v. Crowell*, 88 Ga. App. 820, 826 (78 SE2d 103). If it can be seriously contended, however, under the facts of this case

that there is insufficient proof that the deficiencies in the braking, transmission, gears and steering assemblies of the vehicle which were the subject of constant attempts at repair during the month it was in use did not exist at the time the vehicle was delivered, this point becomes immaterial in view of the established agency relation between the defendants for the purposes of repair.

■ One of the specifications of negligence in the petition was that both defendants failed to provide a truck in good operating condition, as to which the court instructed the jury that this should be considered only in connection with the defendant manufacturer, since there was no evidence that Ogden ordered the equipment. From what has been said above, it is obvious that the court agrees with this construction of the evidence. Although a purchasing agent for General Motors testified that all his dealings were with Ogden, he did not know who supplied the truck, and the testimony of both Major of General Motors and Ogden of Kerr establishes that it came direct from the manufacturer, and not upon Ogden's order. Under the evidence, a finding that Ogden was the furnisher of the truck would have been unauthorized and the court properly limited the allegation of negligence to Yale & Towne. And it might additionally be observed that no exception was taken to another portion of the charge as follows: "The reason I only use one of the defendants in this instance, Lady and Gentlemen, is that the providing of the machine under the evidence in this case was not done by the other defendant, Ogden, and that the negligence or the alleged negligence which you would consider in connection with that defendant is whether that defendant failed to properly maintain the equipment."

■ *Code Ann.* § 70-207 requires that before one is entitled to urge that a given instruction to the jury was erroneous he must before verdict make objection in the trial court, stating distinctly the matter to which he objects and the grounds of objection. It also requires that this court review those charges in which there is a substantial error which is harmful as a matter of law, regardless of whether objection was made or not. It was held in *Matthews v. Tucker Real Estate Co.*, 116 Ga. App. 214 (3) (156 SE2d 669): "No questions are raised as to portions of

the charge where there is no reference in the enumerations or in the brief as to portions of the record indicating that the objections were made prior to verdict and what the objections may have been." Most or all of the exceptions to charges in the enumeration of errors here are subject to this defect. Assuming that the rule in *Matthews* should be broadened to cover special grounds of a motion for new trial where they are enumerated as error, and also that it should be limited so as not to apply to situations covered by *Code Ann.* § 70-207 (c), we find no indication either in the brief, enumeration of errors, or amendment to the motion for new trial that any objections were made. We have nevertheless dealt above with several of the instructions because we considered them of particular gravity in deciding the merits of this case. The remaining enumerations of error on the charge (10, 12, 14, 22, 26 and 29) have also been examined for the purpose of determining whether they show substantial error which would as a matter of law have been harmful to the appellant or might have resulted in an invalid verdict. *Childs v. Childs*, 223 Ga. 435, 437 (156 SE2d 21). The test we have applied is whether the arguments urged against the specific instructions show probable error and, if so, whether it is of a kind which would have been likely to influence the jury either to find against the defendant or to return a larger verdict than it might otherwise have done. We are satisfied that this is not the case and that these enumerations of error should accordingly not be individually considered.

██ ██ It appears from testimony and a picture of the elevator in which the plaintiff was injured that there were buttons to the right of the entrance gates and also overhead pull cords for its operation, but from the size and position of the truck in the elevator neither of these could be reached from the driver's seat. To reach the buttons one would have to dismount, and to reach the pull cords leave the seat and climb onto the back of the forklift. These facts became pertinent when, on cross examination of Sharpe, he was asked whether under safety regulations he was required to turn the motor off if he dismounted from the truck. The regulations admittedly had this requirement. One of the main complaints about the forklift from the time it had

been put in service was that the motor was extremely hard to crank and had had to be towed away for repairs on several occasions; that there had been attempts to remedy the situation by installing a more powerful battery and turning up the idling speed, and that on the day of the injury the idling speed had again been reset at almost double its normal r.p.m. The plaintiff testified that he had accordingly been instructed by his foreman not to turn off the motor in the elevator. This meant that it was necessary for the plaintiff, with the motor running, either to crawl out to the back of the truck to reach the pull cords or to dismount and use the push buttons. As to the ropes he testified that the day he came to work the supervisor "told me directly not to use the ropes, that they were too dangerous to stay on a lift and operate it like that because most of the boys I think when they started using those ropes, they left their lifts running and while they were stretching, because you had to stretch to get them, their foot might slip off the brake, might still have it in gear." He was told that the ropes were "dangerous and obsolete." He later testified that when he came back to work after the injury he found that the warehouse had been expanded and the elevators moved back, and that the pull cords had been removed. This latter testimony was objected to as evidence of repairs by a third party, irrelevant and prejudicial, since the appellant contends that "the failure to use these safety cords was negligence on the plaintiff's part which proximately caused the injury."

Evidence of safety instructions received by the plaintiff is admissible to explain his conduct in leaving the motor running in the truck. *Code* § 38-302. Conduct in transactions with third parties is generally *res iter alios acta* and inadmissible. *Code* § 38-202. The trial court must be vested with considerable discretion in determining the admissibility of testimony of collateral matters (*Ludwig v. J. J. Newberry Co.*, 78 Ga. App. 871, 876 (52 SE2d 485)), and if the testimony is relevant for any purpose directly or indirectly its admission is not error. *Continental Trust Co. v. Bank of Harrison*, 36 Ga. App. 149 (5) (136 SE 319). "It is permissible to strengthen a witness's testimony by evidence of matters showing its consistency and reasonableness,

and tending to indicate that the facts probably were as stated by the witness. 70 CJ 1180, § 1368; *Williams v. State,* 152 Ga. 498, 527 (3, 4) (110 SE 286)." *Aycock v. State,* 62 Ga. App. 812 (10 SE2d 84). Because of the strong contention of the defendant that the plaintiff was barred from recovery by his contributory negligence in dismounting from the vehicle with the motor running, the plaintiff had a right to testify that he was instructed not to turn off the motor, that he was instructed that pull cords were obsolete and dangerous, and that he could not otherwise operate the elevator without dismounting. The fact that the employer when it relocated the elevators shortly thereafter eliminated the pull cords is a slight circumstance at least to show that the pull cords had become obsolete, and was to this extent indicative that the facts were as stated by the witness. This testimony does not, as contended by the appellant, tend to prove either the negligence or non-negligence of a third party.

■ The appellee has urged that this enumeration of error not be considered for the reason that the record shows the objection to the evidence in question was not included in the amended motion for new trial. This is no reason to disregard the enumeration of error since, under *Code Ann.* § 6-702, regardless of whether or not a motion for new trial is made and overruled, and whether or not it is transmitted to this court as part of the record "the appellate court may consider all questions included in the enumeration of errors provided for in section 6-810," subject to the exception noted in *Hill v. Willis,* 224 Ga. 263 (2) (161 SE2d 281). See *Bryan v. State,* 224 Ga. 389, 390 (2) (162 SE2d 349).

■ Wenstrup, a witness whose deposition was taken by the plaintiff, had been employed by the defendant to examine the forklift truck about a month after the plaintiff was injured, the truck not having been used or repaired in the meantime. He made a lengthy report about which he was examined, and objection was made to a question about a defect in the truck not connected with the accident. Under the allegations of the petition charging negligence in failing to provide a vehicle in good operating condition and suitable for the purposes for which it

was to be used, testimony of its general condition as revealed by the inspection was relevant and admissible.

■ While we agree with the appellant that the statement of the witness Elliott in answer to a hypothetical question that motor vibration *could have* caused the unit to move from neutral to reverse gear and put the truck in motion, is not sufficient, standing alone, to sustain a finding by the jury that the truck *did* fall into gear and thus injure the plaintiff, we are dealing on objection not with the probative value of the testimony but with its admissibility. The question was highly relevant to the issues involved. The witness qualified as an industrial engineer expert in the field of designing industrial and farm machinery. He had, previously to his appearance, examined a forklift truck provided by the defendant substantially identical to the one involved, and stated: "I am familiar with them in general. I know the theory on which they work and how they are operated. I am not particularly familiar with a given model of a forklift truck." Whether a witness has such experience in a particular science or profession as to entitle him to be deemed prima facie expert is usually within the discretion of the trial court. *American Fire & Cas. Co. v. Grizzle,* 108 Ga. App. 496 (2) (133 SE2d 400). No abuse of that discretion appears.

■ In summary, the plaintiff's action is predicated on the theory that Yale & Towne negligently furnished a defective instrumentality to General Motors which the plaintiff employee was required to use, that it was over seven years old and many of its working parts were badly worn, that the mast, for instance, had a tendency to warp and exert a torque force on the body, had been previously welded and the weld was broken; that the frame racking affected the transmission control linkage to the extent that the lever might appear to be in neutral position when actually in gear, that the brakes were bad, that even at the high idling speed and with a stronger battery, a booster battery was required to start the truck every time the motor stopped, and that it had a tendency to slip out of gear. A General Motors inspection immediately after the accident established that with the gear in reverse the emergency brake would not prevent the truck from crawling backward. The truck had been in service

approximately one month and had been the subject of constant repairs. The plaintiff had called for repairs on the brakes, motor and gear slippage but had not had trouble with the gears for some days and assumed this had been corrected. The idling speed of the motor had been substantially increased on the day of the accident. Compared to other pieces of equipment of the same age it necessitated a high repair frequency. Between November 13 and December 12, in addition to work done by General Motors, Ogden installed a starter, hose on transmission pump, tires, another starter, set of points, battery, condenser, voltage regulator, transmission pump and seals, voltage regulator, another set of points, spark plugs, another condenser, replaced solenoid valve, switch, six volt coil, and generator as well as repair work on the steering and braking mechanisms.

*Was General Motors negligent in continuing to operate the forklift truck, and was this a supervening independent proximate cause of the injury?* Appellant relies on *Elrod v. King,* 105 Ga. App. 46, 49 (123 SE2d 441); *Harley v. General Motors Corp.,* 97 Ga. App. 348 (1) (103 SE2d 191) and *General Motors Corp. v. Jenkins,* 114 Ga. App. 873, 876 (152 SE2d 796) in which latter case it was stated: "The failure of the dealer to discover and correct the defect when he could have done so by the exercise of ordinary care relieves the manufacturer of liability, unless the manufacturer should have foreseen that a dealer might fail to discover and remedy the defect by the exercise of ordinary care." The situations are entirely different, since the duty of the dealer in *Jenkins* and like cases was first to inspect the new vehicle and secondly to sell it and thus place it in the stream of commerce. Here the duty of the bailor was to use ordinary care to inspect the machine before delivery to the bailee in order to ascertain that it was in a reasonably safe condition to avoid injury to third persons. *Holt v. Eastern Motor Co.,* 65 Ga. App. 502, 508 (15 SE2d 895). One who furnishes a motor vehicle to another in a defective condition is not as a matter of law insulated against liability to third persons because the bailee continues to operate the vehicle after discovery of the defect. *Bowyer v. Cummins,* 81 Ga. App. 118 (58 SE2d 224); *Southeastern Air Service v. Crowell,* 88 Ga. App. 820 (78 SE2d 103). This was a question properly left to the jury for determination.

■ *Was the plaintiff barred from recovery by failure to exercise ordinary care for his own safety?* Appellant contends that, whether or not the plaintiff had been told not to turn off the truck motor, and whether or not he had been instructed not to use the pull cords, he had knowledge that the brakes on the truck were defective and that there was a likelihood of the gears slipping, and he should therefore have anticipated injury in walking between the truck and the closed elevator doors. The plaintiff also had knowledge that the idling speed of the truck had been increased, but there is no evidence that he knew it was increased to such an extent that if the mechanism slipped into gear with the brakes on it would move without acceleration, and there is some evidence that the plaintiff had reason to believe the gear slippage had been corrected. The difference between knowledge of a defect and knowledge of the resulting danger has been frequently discussed. *Clayton v. Steve-Cathey, Inc.,* 105 Ga. App. 570 (125 SE2d 118) and citations; *Burns v. Great A. & P. Tea Co.,* 105 Ga. App. 823 (125 SE2d 687). Whether the danger was so obvious that any person in the exercise of ordinary care would have refused to enter the area is certainly a question for the jury and not for the court.

■ *Was the verdict in the sum $200,000 excessive?* The pertinent facts regarding the injuries have been set out above. The plaintiff was 22 years old at the time. There was evidence of severe pain and suffering, past and future, of mutilation, and loss of earning capacity. "When a case comes before this court, after the refusal of a new trial by the presiding judge, it comes not only with the presumption in favor of the verdict, but also stamped with the approval of the judge who tried the case, and where no prejudice or bias or corrupt means in reaching the verdict appear, we are not authorized to set it aside as being excessive." *Atlantic Greyhound Corp. v. Austin,* 72 Ga. App. 289, 292 (33 SE2d 718); *Atlanta &c. Casket Co. v. Hollingsworth,* 107 Ga. App. 594, 597 (131 SE2d 61).

*Judgment affirmed. Pannell, J., concurs. Jordan, P. J., concurs in the judgment.*