24173, 24188.   SMITH v. SMITH; and vice versa.

ARGUED JULY 10, 1967—DECIDED SEPTEMBER 7, 1967.

*Westmoreland, Hall & O'Brien, John L. Westmoreland, P. Joseph McGee,* for appellant.

*Wallace, Wallace & Driebe, Charles J. Driebe,* for appellee.

GRICE, Justice.  A plea to the jurisdiction by the defendant in a suit for divorce and alimony is the subject of the main appeal here (Case No. 24173), and two procedural rulings made prior to the trial of that plea are involved in the cross appeal (Case No. 24188).   These issues arose from the filing by Eloise Dell Jones Smith of a suit for divorce and alimony against Dr. William P. Smith, Jr., in the Superior Court of Clayton County.

The plea to the jurisdiction filed by the defendant husband alleged, insofar as material here, that when the petition was filed on June 5, 1965, he was not a resident of Clayton County, but was a resident of Carroll County.

The jury found against this plea, and thereupon the husband moved for a new trial upon the amended grounds, and also for a judgment notwithstanding such verdict, upon the ground that the undisputed evidence showed that his domicile was in Carroll County, not Clayton County, when the suit was filed.

As to pleas to the jurisdiction the rule is that, "It is not sufficient that they deny the jurisdiction of the court in which the suit is filed, but this must be done by showing that jurisdiction of the suit is in some other court in this State," and, "The burden is upon the defendant to establish the averments of his plea." *Pyron & Son v. Ruohs,* 120 Ga. 1060 (1), 1062 (48 SE 434).

It is also well settled that "The question of domicile is a mixed question of law and fact, and is ordinarily one for a jury"

(*Patterson v. Patterson*, 208 Ga. 7, 13 (64 SE2d 441)), and that "A verdict supported by evidence will not be set aside because the jury would have been authorized to return a different verdict." *Scott v. Gillis*, 202 Ga. 220 (2) (43 SE2d 95).

Thus, the only issue to be determined on the main appeal is whether there was *any* evidence showing that the husband's domicile was in Clayton County, rather than in Carroll County, when the suit was filed on June 5, 1965.

The evidence which we deem significant on this issue is that which follows.

The husband testified that he was born in Carroll County; that he always intended to maintain his legal residence in that county rather than at any of the various other places where he had lived; that he has been a registered voter there since 1935 and has never voted in any other place; that he owns an undivided one-fourth interest in the family home there, and for some years claimed the homestead exemption on it; that he and the plaintiff were married in November 1962; that there are no children of this marriage; that for the last five years he spent several nights each week in the family home in Carroll County because of his mother's illness, and prior to that he spent some time there; and that he has always desired and planned to return to live and practice his profession there. He testified further that when he and his wife separated in February 1965, he left the home in Clayton County and rented an apartment in a private home in Fulton County, where he was when the suit was filed; and that he has no intention of returning to the former home in Clayton County to live, and has not spent a night there since the separation.

Yet, from the husband's testimony it also appeared that from 1935 until the suit was filed in 1965—30 years—he had resided in various places for his professional education, training and practice and had "visited" in the family home in Carroll County; that in April 1963, in previous marital litigation with this plaintiff he filed an answer in which he admitted that he was then a resident of DeKalb County; that later, in June 1963, he and the plaintiff with their joint funds purchased a home in Clayton County and lived there until the separation in February 1965;

that while living in that home he received professional telephone calls there relating to his practice in Fulton County; that it was "possible" his name appeared in the telephone directory with the Clayton County address and that it was "possible" he caused the telephone to be put in the home there; that in his income tax returns for 1962 he gave the Clayton County home as his "home address" instead of Carroll County, as given in 1962, prior to the purchase of such home; and that it was "possible" that he gave Clayton County as his address since the separation.

Basic to the question of domicile here are the following Code sections: "The domicile of every person of full age, and laboring under no disability, is the place where the family of such person shall permanently reside. . . If he has no family . . . the place where such person shall generally lodge shall be considered his domicile." *Code* § 79-401. "The domicile of a person sui juris may be changed by an actual change of residence with the avowed intention of remaining. A declaration of an intention to change the domicile is ineffectual for that purpose until some act is done in execution of the intention." *Code* § 79-406.

In *Worsham v. Ligon,* 144 Ga. 707, 711 (87 SE 1025), this court, after reciting material portions of the above statutes, elaborated as follows: "If a person actually removes to another place, with the intention of remaining there for an indefinite time as a place of fixed domicile, such place becomes his domicile. If a person leaves the place of his domicile temporarily, or for a particular purpose, and does not take up an actual residence elsewhere with the avowed intention of making a change in his domicile, he will not be considered as having changed his domicile. [Citations.] But if a person changes his domicile without any present intention of removing therefrom, it is none the less his domicile, although he may entertain a floating intention to return, or to move somewhere else at some future period." We deem this statement particularly relevant here. Also see, *Williams v. Williams,* 191 Ga. 437, 438 (12 SE2d 352).

Here, although in conflict, the evidence authorized the jury

to reach the conclusion that the husband had in 1963 become domiciled in Clayton County. While the husband insisted that he never intended to change his domicile from Carroll County and he and his other witnesses sought to explain conduct that indicated such change, the jury was authorized to reject those explanations.

Furthermore, the evidence also authorized the conclusion that such Clayton County domicile had not been abandoned when the suit was filed on June 5, 1965. It may be true that he had a longing to go back to Carroll County some day to live and practice, but when the separation took place he did not return to Carroll County to effectuate such desire but took an apartment in Fulton County and was residing there when the suit was filed. While he may have "lodged" in Fulton County, he disavowed it as his domicile. Hence, under the legal principles set forth above, he did not abandon Clayton County as his domicile in favor of either Fulton or Carroll County.

As we appraise this evidence, it did not demand a finding that the husband's domicile, when the suit was filed on June 5, 1965, was in Carroll County, as contended in his plea. Rather, the jury was authorized to find that it was in Clayton County.

Therefore, the denial of the husband's motions for new trial and judgment notwithstanding the verdict was not erroneous.

■ Since the ruling in Division 1 on the plea to the jurisdiction leaves the case to be tried on its merits, the two rulings complained of in the cross appeal also require review here.

■ The first is the denial of the wife's motion to compel the husband to respond to an interrogatory.

The parties have stipulated that this interrogatory sought a copy of the report of a named person covering the written record of his investigation by following the wife during the months of July and August 1965; that the investigator was hired by the husband's attorney after this suit was filed against him; that the report was made directly to that attorney, who states that it is his work product in preparing to defend the case; that the husband refuses to furnish a copy of the report as requested in this interrogatory; and that upon interlocutory hearing the investigator testified, refreshing his recollection from said report.

In a prior appearance of this litigation (*Smith v. Smith*, 222 Ga. 313 (149 SE2d 683)), we affirmed the trial judge's refusal, upon the interlocutory hearing, to allow the wife's counsel to examine a portion of the report, from which this investigator, then on cross examination, had refreshed his recollection. There, the trial judge had ascertained that the portion withheld pertained to another matter and had not been used by the witness in refreshing his memory when testifying.

In this review we have a different factual situation and thus a different issue. It is whether production of a copy of such report should be required in answer to an interrogatory, in view of *Code Ann.* § 38-2109 (b) (Ga. L. 1959, pp. 425, 438).

The discovery procedure involved (*Code Ann.* § 38-2109, supra) provides in Subsection (a) for court order for the production of documents and other papers, which are not privileged, upon a motion showing good cause therefor. In Subsection (b) it provides that *copies* of documents and other papers listed in Subsection (a), "as are subject to discovery without a showing of necessity or justification," may be obtained without court order by requiring such copies to be attached to answers to interrogatories. Subsection (b) was materially changed by amendment to the Georgia Civil Practice Act of 1966 (Ga. L. 1966, p. 609; Ga. L. 1967, p. 226), which became effective after this case was tried.

The foregoing quoted language of Subsection (b) is derived from Hickman v. Taylor, 329 U. S. 495, 510 (67 SC 385, 91 LE 451). There, the Supreme Court of the United States characterized the discovery sought in that case as "simply an attempt, without purported necessity or justification, to secure written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties." The court referred to such preparation in his client's case as the "work product of the lawyer," and stated that "As such it falls outside the arena of discovery and contravenes the public policy underlying the orderly prosecution and defense of legal claims."

In the situation now before us, the facts measure up to the work concept of the Hickman case, supra. The report, copy of

which is sought, was made by an investigator hired by the husband's attorney after the suit for divorce and alimony had been filed against him. Thus, there was actual, not just possible, litigation and an existing attorney and client relationship. The investigator, hired by such attorney to keep the wife under surveillance, reported directly to that attorney. Therefore, what was done by him under the attorney's instruction and supervision was as much a part of the attorney's work as if he had done it himself. For a scholarly discussion by Judge Eberhardt of the work product concept and its consequences in discovery procedure, see *Atlantic C. L. R. Co. v. Daugherty,* 111 Ga. App. 144 (141 SE2d 112). See also, *Atlantic C. L. R. Co. v. Gause,* 116 Ga. App. 216 (156 SE2d 476).

It follows that since this report was the work product of the husband's attorney, the wife's discovery effort must fail. Nowhere in the stipulation or elsewhere in the record is there any showing or attempt at showing that production of a copy of the report was necessary or justified. See in this connection, Hickman and *Atlantic C. L. R. Co.* cases, supra; 23 AmJur2d 549, 552, Depositions and Discovery, §§ 195, 196. In fact, such justification and necessity are negatived, to some extent at least, by the fact that upon the subsequent interlocutory hearing the investigator was available and testified on both direct and cross examination.

The trial court's refusal to require production of a copy of the report was, in our opinion, not erroneous.

■ The second ruling complained of in the cross appeal is the order allowing disbursement on debts of the defendant of certain funds held by his attorney as escrow agent, without hearing any evidence in proof of the existence of the alleged debts. However, it has since been ascertained that these funds have already been disbursed. No supersedeas was obtained. Under these circumstances, any issue over their release is now moot and will not be considered.

We find no error in the rulings enumerated in the main appeal or in the cross appeal.

*Judgments affirmed on main appeal and on cross appeal. All the Justices concur.*