A90A2377, A90A2378. HEYDE v. XTRAMAN, INC. et al.; and vice versa.
(404 SE2d 607)

COOPER, Judge.
 This appeal and cross-appeal arise out of a products liability action which resulted from an injury suffered by appellant, Heyde, while using a hoist rented from one of the corporate appellees, Xtraman, Inc. ("Xtraman"). Xtraman began operation in 1980, with the sole shareholders being William Eckes ("Eckes") and his wife. Eckes personally owned the patent for the manufacture of the hoists, and the company, which owned the assets, engaged in the manufacture, lease and sale of the hoists which were used in the heating and air conditioning business. In April 1984, the corporate minutes reflect that the president reported to the company that the cost of product liability insurance would increase upon the next renewal and that the prices charged for the company's products should be increased. In April of the following year, the minutes reflect that the president reported that the company's product liability insurance had not been renewed and that he was in the process of trying to secure such insurance. However, if the insurance could not be obtained, the company's policy should be changed to retrenchment rather than growth and the assets and liabilities of the company should be reduced, eventually leading to the dissolution of the company. In April 1986, the president reported that he could not secure affordable insurance, and therefore he had continued to follow the policy of retrenchment during the previous year and assets were being sold with the proceeds used to retire corporate debt. Eckes testified that Xtraman was basically out of operation by the end of 1985 but that administrative functions continued until April 1986, when the final payroll was completed. Appellant rented a hoist from Xtraman on June 27, 1985, and was injured on July 1, 1985. On July 3, 1986, appellant filed a suit against Xtraman only which was dismissed for lack of prosecution in

September 1987. On March 2, 1988, a renewal suit was filed against Xtraman and Eckes individually. Subsequently, a second corporation, Hoists, Inc., was added as a defendant to the suit. After Xtraman was dissolved in 1986, Eckes attempted to enter a different business but continued to hold the patent on the hoist. The second business failed and in January 1988, Eckes formed Hoists, Inc. ("Hoists"), which manufactures hoists which are almost identical to those made by Xtraman. Hoists is operating without any products liability insurance, a fact which Eckes stated is conveyed directly to each customer. Consequently, Hoists has no assets and leases all machinery necessary for its operations. Prior to trial, the trial court granted summary judgment in favor of Eckes individually on the theories of negligence, strict liability and breach of implied warranty. The trial was then bifurcated, with the jury considering in the first phase the liability of Xtraman only under the negligence and breach of warranty theories. A verdict was returned against Xtraman for $1,169,000 compensatory and $237,000 punitive damages. The court then granted Xtraman's motion for a directed verdict and overturned the punitive damage award. In the second phase of the trial, the jury considered the liability of Eckes individually under the theory that he was the "alter-ego" of Xtraman and therefore the corporate veil should be pierced to hold Eckes liable for any liability of the company. The jury also considered the liability of Hoists as the successor corporation to Xtraman. Appellees had submitted a motion for a directed verdict on the personal liability of Eckes under the alter ego theory prior to submission to the jury, and the court reserved ruling on the motion. The jury returned a verdict against both Eckes and Hoists. The court then ruled on the reserved motion for directed verdict and granted it, thereby discharging Eckes from all liability. A judgment was then entered against Xtraman and Hoists for $1,169,000 plus interest.

In Case No. A90A2377, the main appeal, appellant appeals the partial grant of summary judgment in favor of the individual appellee, Eckes, and the grant of a directed verdict in favor of Eckes. In Case No. A90A2378, the cross-appeal, cross-appellants appeal the trial court's ruling which excluded certain testimony at trial.

*Case No. A90A2377*

1. Appellant first enumerates as error the trial court's grant of summary judgment in favor of Eckes on the theories of negligence, strict liability and breach of implied warranty. We agree with appellees and the trial court that the negligence and strict liability claims against Eckes are barred because they were not timely filed. The statute of limitation for negligence and strict liability claims seeking recovery for personal injuries is two years. OCGA § 9-3-33; *Daniel v.*

*American Optical Corp.*, 251 Ga. 166 (1) (304 SE2d 383) (1983). Although the original suit filed by appellant was dismissed, appellant refiled his case within six months as allowed under the renewal statute, OCGA § 9-2-61. The first suit, however, named only Xtraman as a defendant, whereas the second suit added Eckes as a defendant for the first time. " 'To be a good "renewal" of an original suit, so as to suspend the running of the statute of (limitation) . . . the new petition must be substantially the same both as to the cause of action and *as to the essential parties.* (Cits.)' " (Emphasis in original.) *Patterson v. Rosser Fabrap Intl.*, 190 Ga. App. 657, 658 (379 SE2d 787) (1989). "Thus, the renewal statute 'may not be used to suspend the running of the statute of limitation as to defendants different from those originally sued.' [Cits.]" *Wagner v. Casey*, 169 Ga. App. 500, 501 (2) (313 SE2d 756) (1984). Appellant argues that since he presented evidence to show that Eckes was the alter ego of Xtraman, then the rule just quoted should not apply and the statute should be tolled as to Eckes. In *Cornwell v. Williams Bros. Lumber Co.*, 139 Ga. App. 773 (229 SE2d 551) (1976), the alter ego theory was raised as to the defendant's liability, however the court did not use that theory to toll the statute of limitation as to the different party named in the renewal action. In *Atlantic Coast Line R. Co. v. Knapp*, 139 Ga. 422 (2) (77 SE 568) (1912) and *Wofford v. Central Mut. Ins. Co.*, 242 Ga. 338 (2) (249 SE2d 21) (1978), the statute was tolled in renewal actions against a successor corporation formed by merger and against a deceased defendant's administrator or representative, respectively. These cases can be distinguished from the instant case in which two distinct parties are named as defendants. Since the suit against Eckes was not filed until after the applicable statute of limitation had run, the negligence and strict liability claims are barred as untimely.

The breach of implied warranty claim against Eckes, which is governed by a four-year statute of limitation, OCGA § 9-3-25, likewise fails because the rental agreement giving rise to any warranty claim was between Xtraman and appellant. Eckes was not at all a party to the rental contract and cannot be a liable party under a warranty claim which requires proof of privity between the parties. See *Gowen v. Cady*, 189 Ga. App. 473 (4) (376 SE2d 390) (1988). Eckes' liability as the alter ego of Xtraman is considered in Division 2 below. Since Eckes was not a party to the rental contract, we need not consider, as to Eckes, the other contentions of appellant based upon the applicability of the Uniform Commercial Code and the disclaimer of warranties. The court properly granted Eckes' motion for summary judgment on the three theories discussed above.

2. Appellant next contends that the court erred in granting the motion for directed verdict in favor of Eckes on the theory of alter ego or piercing the corporate veil. A directed verdict is " 'proper only

where "there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict." [Cits.]' [Cit.]" *Hiers-Wright Assoc. v. Manufacturers Hanover &c. Corp.*, 182 Ga. App. 732 (2) (356 SE2d 903) (1987). In *Amason v. Whitehead*, 186 Ga. App. 320, 321-322 (367 SE2d 107) (1988), we reversed the trial court's denial of a judgment notwithstanding the verdict in a case where the jury found the corporate veil had been pierced. We stated: " 'While upon equitable principles the legal entity of a corporation may be disregarded' [cit.], great caution should be exercised by the court in doing so. [Cit.] . . . [I]n order to disregard the corporate entity because a corporation is a mere alter ego or business conduit of a person, it should have been used as a subterfuge so that to observe it would work an injustice. To prevail based upon this theory it is necessary to show that the shareholders disregarded the corporate entity and 'made it a mere instrumentality for the transaction of their own affairs; that there is such unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist.' [Cit.] ' "The concept of piercing the corporate veil is applied in Georgia to remedy injustices which arise where a party 'has over extended his privilege in the use of a corporate entity in order to defeat justice, perpetuate fraud or to evade contractual or tort responsibility.' " ' [Cit.] Because the cardinal rule of corporate law is that a corporation possesses a legal existence separate and apart from that of its officers and shareholders [cit.], the mere operation of corporate business does not render one personally liable for corporate acts. [Cit.] Sole ownership of a corporation by one person or another corporation is not a factor, [cit.], and neither is the fact that the sole owner uses and controls it to promote his ends. [Cit.] There must be evidence of abuse of the corporate form. [Cit.] Plaintiff must show that the defendant 'disregarded the separateness of legal entities by commingling on an interchangeable or joint basis or confusing the otherwise separate properties, records or control.' [Cits.]" (Indention omitted.)

From the evidence adduced at trial, we agree with the trial court that appellant has not presented sufficient evidence to allow a jury to pierce the corporate veil to hold Eckes personally liable for the liability of Xtraman. The process of the retrenchment and dissolution of Xtraman had been instituted for legitimate business reasons before appellant was injured. The dissolution was substantially complete before appellant's suit was filed. At all times during the existence of Xtraman, Eckes kept detailed corporate and financial records which evidenced his observance of the separateness of himself and the corporation. Appellant has submitted no evidence of fraud, commingling of funds or assets, or undercapitalization. There is no evidence that the formation of Hoists, a legitimate corporation in its own right,

would result in piercing the veil of Xtraman pursuant to the above-quoted standards. "We draw no inference of fraud, artifice, or trickery from the [dissolution of Xtraman and the formation of Hoists]. . . . Nor do all of the facts of this case combine to show that the 'corporate veil' of [Xtraman] should be pierced." (Indention omitted.) *Williams Plaza v. Sedgefield Sportswear &c.*, 164 Ga. App. 720, 723 (297 SE2d 342) (1982). "Having failed to show that the corporate entity of [Xtraman] was improperly used to promote fraud or other injustice, [appellant] cannot claim that equity demands disregard of the corporate fiction merely because [Xtraman] is now unable to satisfy its debt. '(O)ne who deals with a corporation as such an entity cannot, in the absence of fraud, deny the legality of the corporate existence for the purpose of holding the owner liable.' [Cit.]" *Williams Plaza*, supra. The motion for directed verdict was properly granted as to appellant Eckes on the theory of alter ego.

### Case No. A90A2378

In this cross-appeal, cross-appellants, Xtraman and Hoists, contend, in a sole enumeration of error, that the trial court erred in excluding in its entirety the testimony of Luther Cox ("Cox"), an expert that cross-appellants sought to call as a witness at trial. Cox was originally retained in September 1985 by an attorney who was then representing cross-appellee, Heyde. Cox was employed to form opinions on the cause of the accident, and in furtherance of his duties, Cox inspected the hoist and other equipment involved in the accident, inspected the site of the accident and interviewed the cross-appellee. He also took various photographs of the equipment and the accident site. Cox reported his findings and turned his file over to the attorney that hired him. Subsequently, Cox communicated with cross-appellee on one occasion but then was uninvolved in the case until shortly prior to trial several years later. Cross-appellants contend that they did not learn of the involvement of Cox until late in the proceedings and stated that upon such discovery, they interviewed him and then subpoenaed him as a witness at trial. There is no contention by cross-appellants that cross-appellee failed to completely and fully respond to all discovery served by cross-appellants. The trial court ruled that the photographs taken by Cox would be admissible if they were shown to be relevant and material. The court further ruled that Cox was excluded from giving any testimony at trial. The court first determined that Cox's relationship with his original employer, cross-appellee, was a privileged one arising from the confidential attorney/client relationship and that Cox was in a position of a conflict of interest by communicating with cross-appellants. Additionally, the court held that the rules of discovery as set forth in OCGA § 9-11-26 (b) (4),

which establish the requisite procedures for obtaining information from experts, had been violated. Because cross-appellants made no showing that there was an exceptional need to elicit the testimony of this witness or that a substantial equivalent was unavailable, the court invoked the "basic fundamental concepts of justice" and excluded Cox's testimony in its entirety. After a review of the record before us and the applicable legal principles, we affirm the court's decision.

We first agree with cross-appellee that the exclusion of Cox's testimony was a proper sanction for the violation of the rules of discovery set forth in OCGA § 9-11-26 (b) (4). "Trial courts have broad discretionary powers under the discovery provisions of the Civil Practice Act and appellate courts have consistently refused to interfere with the exercise of a trial court's discretion except in cases of clear abuse. [Cit.]" *Opatut v. Guest Pond Club*, 188 Ga. App. 478, 482 (9) (373 SE2d 372) (1988). OCGA § 9-11-26 (b) (4) clearly sets forth the procedures a party must follow to obtain discovery from any expert, both those that the opposing party expects to call at trial and those that are not to be called as witnesses. Cross-appellants did not attempt to follow these procedures and should not now be allowed to circumvent them by engaging in ex parte communications with the opposing party's expert and then asserting that they are not seeking to engage in discovery but seeking to call a witness at trial. Cross-appellee has cited this court to a federal case which has adopted the position we espouse herein. In *Campbell Indus. v. M/V Gemini*, 619 F2d 24 (2) (9th Cir. 1980), the court, in considering the federal rule of discovery of experts, upheld the court's discretion to exclude expert testimony at trial as a sanction for the violation of the rules of discovery. *Jones v. Scarborough*, 194 Ga. App. 468 (390 SE2d 674) (1990), cited by cross-appellants, is inapplicable because the witness therein was not an "expert" within the ambit of the discovery rules. *Sherrill v. Martin*, 161 Ga. App. 558 (288 SE2d 648) (1982) is likewise inapplicable because the issue therein was the proper showing of compliance with the discovery rules, not a sanction for avoidance of these rules altogether. The expert in *Sherrill* was to be called as a witness at trial, therefore the statutory showing of exceptional circumstances did not apply. The case also cited by cross-appellants, *Logan v. Chatham County*, 113 Ga. App. 491 (148 SE2d 471) (1966), involves the unique issue of the valuation of condemned land and further does not address the issues posed by the clear violation of the rules of discovery as to experts. We conclude that the trial court did not abuse its discretion to impose the sanction of exclusion of Cox's testimony for the violation of the rules of discovery.

We also determine that the trial court's reasoning based on the protection of privileged relationships was a sound one. Exclusion of

expert testimony at trial when the expert was retained by the opposing party or his attorney has been recognized as proper in certain circumstances in two federal cases cited by cross-appellee, *Marvin Lumber &c. Co. v. Norton Co.*, 113 F.R.D. 588 (D. Minn. 1986) and *Paul v. Rawlings Sporting Goods Co.*, 123 F.R.D. 271 (S.D. Ohio 1988). In *Smith v. Smith*, 223 Ga. 551 (2) (156 SE2d 916) (1967), it was held that the report of an investigator hired by a husband's attorney was "as much a part of the attorney's work as if he had done it himself." Id. at 556. Therefore, the court denied the wife's discovery of the report. Cox had been hired by cross-appellee's attorney and had communicated with that attorney and with cross-appellee about the case in the formulation of his expert opinions. We cannot say that the trial court was incorrect in excluding the testimony.

Lastly, notwithstanding our discussion above, we agree with cross-appellee that cross-appellants have not met their burden to show that the contended error was harmful. We do not have before us a complete transcript of the evidence adduced at trial. We do not know if cross-appellants were able to produce the testimony of other experts whose testimony would render Cox's statements merely cumulative. See *Jones*, supra at Division 3.

*Judgments affirmed. Banke, P. J., and Birdsong, P. J., concur.*

DECIDED MARCH 5, 1991 —
REHEARING DENIED MARCH 26, 1991 —

*Jeffrey R. Nickerson*, for appellant.
*Parkerson & Shelfer, William S. Shelfer, Jr.*, for appellees.