## BRANNAN & HOLDER *v.* MOORE.

1. While in a suit by the owner of a certain horse, against a defendant to whom he had hired the same for the purpose of driving, to recover the value of the horse on the ground that the defendant continued driving the horse after it became sick and after the discovery of the sickness of the animal by the ·defendant, which continued driving of the horse in that condition caused the death of the animal, a charge of the court to the jury, to the effect that, among other obligations on the part of the bailor, there is an obligation that the thing bailed is free from any secret fault rendering it unfitted for the purpose for which it was hired, was not exactly adapted to the issues of the case, it was not, under the evidence, so misleading as to injure the plaintiffs.
2. Where the court stated the rule defining the obligations of the bailee as favorably to the bailor as he was entitled to have it stated, the fact that the court charged as to the rule of diligence upon the part of the bailee in cases where the bailor sends his agent with the thing hired was not prejudicial to the plaintiff in the case, although there was no evidence to show that the bailor sent his agent with the team hired, but on the contrary the evidence showed that no agent of·the bailor was sent with the horse which constituted the subject of the bailment.

DECEMBER 15, 1910.

Damages. Before Judge Felton. ₁ Bibb superior court. January 25, 1910.

*O. C. Hancock,* for plaintiffs in error.

*J. B. Jackson* and *W. A. McClellan,* contra.

BECK, J. Brannan & Holder brought suit against R. L. Moore to recover a sum of money alleged to be the value of a horse which was one of a pair that the plaintiffs had hired to the defendant, and which was driven by the defendant a distance of fourteen or fifteen miles into the country, the journey having commenced at about 2 o'clock in the afternoon and ended six or seven hours later. It is alleged in the petition, that the defendant made application to the petitioners for a team, consisting of a pair of horses and a carriage, to be used by the defendant on the day of the hiring for the purpose of going for some distance out into the country; that after the team had been driven about two miles one of the horses became sick, and this fact was discovered by the defendant, but he continued to drive the horse for a distance of about twelve or

fourteen miles into the country; that having reached his destination, after permitting the horse to rest about an hour and a half, he drove the said horse, while showing signs of sickness, back to the city of Macon, whence he had started; and that when 'near the end of the return journey the horse stopped and fell, and in a few minutes died as the result of the continuous driving; and that the condition of the horse was known to the defendant. The defendant admitted the hiring of the horse and driving for about the distance alleged, but denied that he knew of or discovered the condition of the horse before it stopped and fell. He averred that there were no indications that the horse was sick or diseased, though at times he observed that it was somewhat sluggish; but that he, not "being acquainted with the disposition and qualities of said horse, and relying on plaintiff to furnish him a pair of good horses, presumed that plaintiff had at least furnished him a pair of well horses." Defendant admitted that the horse died, but denied that the death was due to excessive driving or to any negligence or fault on the part of the defendant. Testimony tending to sustain the contentions of both parties was introduced on the trial. The jury, after being charged by the court and after considering the case, returned a verdict for the defendant. The plaintiffs made a motion for a new trial, and that being overruled, they excepted.

1. The original motion for a new trial contained the general grounds. The plaintiffs amended the motion, and the amendment contained several grounds; among them, one assigning error upon the following charge of the court: "Now, what is the rule that relates both to the plaintiffs and defendant in reference to that matter? Among all the rules, so far as the plaintiffs are concerned, who, in law, is known as the bailor, and the defendant is the bailee, and that among other obligations on the part of the bailor there is an obligation that the thing bailed is free from any secret fault rendering it unfit for the purpose for which it was hired. And that means this: if there was anything in the physical condition of the horse in this case, that is the subject-matter of this controversy, which made it unfitted, whether Brannan & Holder knew it or not, for the use for which it was intended and hired, then that would be a violation on the part of Brannan & Holder of an obligation which they were due to the defendant. In other words, when one hires a horse for a specified purpose and time, if they

give him a horse unsuited for the purpose of driving and unfitted on account of his condition for that purpose, that would be a violation of the obligation a bailor is under hiring it." It will be observed that the substantive rule of law stated in this charge is from § 2906 of the Civil Code, which contains a general statement of the obligations of a bailor. And while the rule of law referred to is perhaps not adjusted to the issues of this case, and is applicable rather in a case where the bailee is the complainant and it is contended that the bailee is deprived of the use of a thing on account of some secret fault rendering it unfit for the purpose for which it was hired, we do not think that the giving of the principle in charge to the jury in this case could have misled the jury to the injury of the plaintiffs. Nor is it, while not exactly adapted to the issues involved here, entirely foreign to the issues; as the bailor would not have been complying with his general obligations to the bailee if he had hired him a horse which at the time of the hiring was afflicted with a sickness or other fault secret in its character, which rendered it unfitted for the purpose for which it was hired.

2. The plaintiffs complain that the court erred in charging the jury as follows: "If the bailor sends his own agent with the thing bailed as driver, then the hirer is bound either to the bailor or third persons only for the consequence of his own direction or gross neglect. You see there is a difference, where the horse is hired, between the liability and duty of the bailee where he has a driver sent, and a case where the bailee does not have a driver sent, and that is the material difference under the law." It is contended that this charge is not "the law in this case under the evidence submitted." But in immediate connection with this statement of the law the court charged as follows: "Now, what is the next law relating to it? In all cases of bailment, after proof of loss the burden is on the bailee to show proper diligence. Now, that means this: In this case if you believe that Moore hired from Brannan & Holder the horse set out in this case, the one that died, and they show that fact and the value of the animal, then the burden is shifted, as it is called, from the plaintiffs to the defendant; it is shifted to the extent that there is then a duty upon the part of the defendant to show that he has exercised all diligence which, in cases of that character, the law requires that he shall exercise; and if he don't show that diligence, then he is liable to the

plaintiffs. Now, the reason for that rule is this: A man goes to a livery stable and hires a horse; he hires it according to the understanding and contract made between them; the possession of the thing passes to the man who hires it, the livery-stable keeper loses control of it during the hiring; he has no opportunity of following it and knowing its condition; consequently the law charges upon the hirer, the man for the time being becomes the bailee, the duty of exercising ordinary care and diligence in its use; consequently, if he dies on his hands, or for any cause he is not able to reproduce it and deliver it back to the man from whom he hires it, the duty is upon him to show that he has exercised, relatively to the thing hired, the diligence the law imposes upon him; and you can see why, the reason of the rule is, that being in his possession, and being responsible for that diligence which the law requires of him, it is naturally his duty to show he has exercised ordinary diligence to preserve it and handle it." And then, after giving a definition of ordinary diligence and a pertinent statement of the contentions of the parties, the court continued: "If you believe the defendant did in this case exercise ordinary care and diligence, such as every prudent man takes of his own property of a similar nature, even though the horse died, he would not be responsible. If, on the other hand, he has failed to show that he did exercise ordinary care and diligence, did fail to exercise such care as every prudent man would take of his own property, then that would be such ordinary neglect as would make the defendant responsible." Considering these excerpts together, and as they appear in the charge, it will be seen that the court stated the rule as to the engagements of the hirer as favorably to the plaintiffs in the case as they were entitled to have it stated. And while there was no evidence to show that the bailor sent his own agents with the horse that was hired in the present case, and consequently so much of the charge as instructs the jury as to the responsibility of the hirer when the bailor sends his agent with the thing bailed was inapplicable, we do not see how the inclusion of this rule taken from § 2907 of the Code, relating to the obligations of the hirer, could have either confused or misled the jury to the hurt of the plaintiffs.

The evidence authorized the verdict, and the court did not err in refusing to grant a new trial.

*Judgment affirmed: All the Justices concur.*