68759, 68760. SEABOARD COAST LINE RAILROAD v. MOBIL CHEMICAL COMPANY; and vice versa.
(323 SE2d 849)

POPE, Judge.

These appeals are from the grant and denial of partial summary judgments to the parties in a suit and counterclaim arising from the derailment of a tank car carrying a chemical product classified as a hazardous material by the United States Department of Transportation, and shipped pursuant to the regulations promulgated under the Hazardous Materials Transportation Act (49 USC § 1801 et seq.).

The undisputed facts are as follows. Mobil Chemical Company (Mobil) leased the tank car for use in its business operation from General American Transportation Corporation (GATX). In February of 1982 Mobil contracted with Seaboard Coast Line Railroad d/b/a Georgia Railroad to transport the tank car loaded with phosphorus tricholoride (PC13) from Mobil's plant in Charleston, South Carolina to its customer's plant in Mount Pleasant, Tennessee. The contract consisted of a "straight bill of lading — short form," which was issued at the time of shipment, and a longer and more detailed bill of lading, designated as a "Uniform Domestic Straight Bill of Lading," which was incorporated by reference into the short form bill of lading. Before the tank car was delivered to the railroad from the Mobil plant in Charleston for shipment, it was inspected by a Mobil employee and no defects were discovered. On February 24, 1982 the tank car was placed in the railroad train and examined by two railroad inspectors, but no defects were found. Traveling in a westerly route, while the train stopped in Augusta, Georgia, the tank car was again inspected by two railroad employees whose scrutiny revealed no defects. On the morning of February 25, 1982, passing through Greens-

boro, Georgia, the train derailed, causing the tank car to leak PC13 into the environment and necessitating the evacuation of the community. In addition to extensive damage to its property and equipment, the railroad subsequently made substantial payments to third persons in settlement of claims made against it for personal injuries and damage to freight and surrounding properties caused by the derailment. The railroad's investigation to determine the cause of the derailment made evident that it resulted from a fracture of the tank car's truck bolster, that portion of the undercarriage which supports the tank. At least 25% of the fracture was a defect which existed while the tank car was in Mobil's possession before it was delivered to the railroad, but each party contends that the defect was not discoverable upon a reasonable inspection by its own personnel.

This action was initially instituted by Mobil for a declaratory judgment as to its liability for the derailment. The railroad answered and filed a counterclaim in three counts for the damages sustained based upon Mobil's alleged negligence; breach of express and implied warranties in regard to the condition of the tank car; and for indemnity or contribution. Upon the railroad's motion the trial court dismissed Mobil's complaint for declaratory relief. Subsequently, Mobil filed a motion for summary judgment as to the railroad's counterclaim, which was granted only as to the breach of warranty count. The main appeal is brought by the railroad from this grant of summary judgment. The cross-appeal by Mobil is from denial of summary judgment on the other two counts.

1. The railroad has filed a motion to dismiss the cross-appeal, contending that Mobil failed to comply with the proper interlocutory procedure for appealing from the denial of a motion for summary judgment under OCGA § 5-6-34 (b) as interpreted in *Ins. Co. of North America v. Fowler*, 148 Ga. App. 509 (3) (251 SE2d 594) (1978), and the cases cited therein. That, and other similar holdings, are no longer valid authority, however, and must be expressly overruled. See, e.g., *Walter E. Heller & Co. v. Color-Set, Inc.*, 152 Ga. App. 347 (262 SE2d 614) (1979); *Allstate Ins. Co. v. Renshaw*, 151 Ga. App. 80 (4) (258 SE2d 744) (1979); *Globe Life &c. Ins. Co. v. Mapp*, 148 Ga. App. 565 (252 SE2d 5) (1978). The latest expression of the Supreme Court in this regard is "that when a direct appeal is taken, any other judgments, rulings or orders rendered in the case and which may affect the proceedings below may be raised on appeal and reviewed and determined by the appellate court." *Southeast Ceramics v. Klem*, 246 Ga. 294, 295 (271 SE2d 199) (1980). This applies equally to appeals and cross-appeals. *Executive Jet Sales v. Jet America*, 242 Ga. 307 (248 SE2d 676) (1978). Thus, when as here, "there is a direct appeal of a grant of partial or complete summary judgment, in the interest of 'judicial economy,' other rulings in the case may be re-

viewed." *Gulf Oil Co. v. Mantegna*, 167 Ga. App. 844, 845 (307 SE2d 732) (1983). Consequently, the motion to dismiss is denied and a review of both appeals is in order. Accord *U. S. F. & G. Co. v. Ryder Truck Lines*, 160 Ga. App. 650 (1) (288 SE2d 1) (1981).

2. We are unable to agree with the railroad that it was the intent of 49 USC § 1801 et seq. or the federal regulations governing the safe transportation of hazardous materials in interstate commerce to impose either an express or implied warranty against latent defects in the tank car upon the shipper, Mobil. These regulations, found in 49 CFR § 171 et seq., require the shipper to describe in the shipping papers the hazardous material being transported in the manner set forth therein. The "Shipper's Certification," 49 CFR § 172.204, upon which the railroad bases its assertion that the bills of lading constituted an express contractual warranty of fitness, provides only that the shipper must certify that the hazardous "materials are properly classified, described, packaged, marked and labeled, and are in proper condition for transportation according to the applicable regulations of the Department of Transportation."

The fact that 49 CFR § 171.8 defines "packaging" as "the assembly of . . . containers and any other components . . . and includes . . . tank cars," and that 49 CFR § 171.2 states that "[n]o person may offer or accept a hazardous material for transportation . . . unless that material is properly . . . packaged . . .," does not create an express warranty by the *shipper* alone that the material is "properly" packaged and in the requisite condition for shipment. The same regulations also require the *carrier* to inspect for defects before accepting and transporting such materials, and prohibit it from doing so unless all the conditions are met. See 49 CFR §§ 174.3, 174.9 and 174.12. The clear import of these regulations is to provide a system designed to protect the general public from unreasonable risks to health, safety or property posed by the transportation of such hazardous materials in commerce, not to impose a strict liability on the part of shippers of these materials, burdening them with an absolute duty to insure against all risks or harm.

Nor does the bailment statute (OCGA § 44-12-63 (3)), which obligates a bailor to "warrant . . . that the thing bailed is free from any secret fault rendering it unfit for the purposes for which it is hired," require a different result. While the term "warrant" is used in the statutory language, it is clear from reading the cases that "[t]he bailor's liability is not determined alone by the provisions and warranties of the bailment contract," but also by the common law rules of negligence. *Hertz Drive-Ur-Self Stations v. Benson*, 83 Ga. App. 866 (3) (65 SE2d 191) (1951). See, e.g., *Yale & Towne, Inc. v. Sharpe*, 118 Ga. App. 480 (6) (164 SE2d 318) (1968); *Southeastern Air Service v. Crowell*, 88 Ga. App. 820 (1) (78 SE2d 103) (1953).

We also note that in Georgia any imposition of strict liability through an implied warranty of fitness is applicable by statute to the manufacturers of new products, in this case GATX, and it is not applicable to the providers of services. See OCGA § 51-1-11; *McAllister v. American Nat. Red Cross*, 240 Ga. 246 (1) (240 SE2d 247) (1977); *Talley v. City Tank Corp.*, 158 Ga. App. 130 (3) (279 SE2d 264) (1981). This of course is likewise true in the sales article of the Uniform Commercial Code. See OCGA §§ 11-2-313, 11-2-314 and 11-2-315; *Redfern Meats, Inc. v. Hertz Corp.*, 134 Ga. App. 381 (4) (215 SE2d 10) (1975). "Although several states have done so, the courts of Georgia have not adopted a general rule of strict liability. [Cits.]" *Ford Motor Co. v. Carter*, 239 Ga. 657, 658 (238 SE2d 361) (1977). It thus appears that under the Hazardous Materials Transportation Act only a cause of action in ordinary negligence is available for recovery against a shipper or carrier. Accordingly, the trial court correctly granted summary judgment to Mobil on the warranty count of the railroad's counterclaim.

3. We further agree with the trial court that summary judgment is not proper in regard to the allegations of negligence because there exist genuine issues of material fact. OCGA § 9-11-56. Questions remain for the jury as to what inspections and repairs were made by Mobil and whether or not a reasonable inspection either by Mobil or the railroad would have revealed the defect. It follows that if the railroad can establish to the satisfaction of the jury that it was compelled to pay damages for which it was liable contractually or as a matter of law under OCGA § 46-8-292 because of negligence imputed to it as the result of any negligence committed by Mobil, it can seek to recover through contribution or indemnity from Mobil. "Where a tortious act does not involve moral turpitude, contribution among several trespassers may be enforced just as if an action had been brought against them jointly. Without the necessity of being charged by action or judgment, the right of a joint trespasser to contribution from another or others shall continue unabated and shall not be lost or prejudiced by compromise and settlement of a claim or claims for injury to person or property. . . ." OCGA § 51-12-32 (a). This statute expressly permitted the railroad to settle the claims against it without prejudicing its substantive right to seek indemnity from Mobil in the present suit. *Hyde v. Klar*, 168 Ga. App. 64 (308 SE2d 190) (1983); *Ranger Constr. Co. v. Robertshaw Controls Co.*, 158 Ga. App. 179 (279 SE2d 477) (1981). See generally *Marchman & Sons, Inc. v. Nelson*, 251 Ga. 475 (306 SE2d 290) (1983). Consequently, summary judgment was correctly denied on the issue of the negligent inspections of both the railroad and Mobil, and the case must proceed to trial in this posture for jury determination.

*Judgment affirmed. McMurray, C. J., Deen, P. J., Banke, P. J.,*

*Birdsong, P. J., Carley, Sognier, Benham, and Beasley, JJ., concur.*

Decided November 7, 1984 —

*William B. Brown,* for appellant.
*W. Pitts Carr, David H. Pope, Joe C. Freeman, Jr., H. Michael Madsen,* for appellee.