71156. PETROZIELLO v. UNITED STATES LEASING
CORPORATION, EOS LEASING DIVISION.
(338 SE2d 63)

BIRDSONG, Presiding Judge.

Summary Judgment — Breach of Lease. In August and September 1981, Thomas Petroziello, who was in the car sales business, entered into negotiations with Exxon Office Systems Company for the lease of electronic equipment designed to allow Petroziello to communicate directly with his bank's computer to ascertain credit standing of potential customers. A sales representative of Exxon Office Systems, one Brown, conducted the negotiations on behalf of Exxon with Petroziello and represented that the "Quip Machine" would perform as desired.

From the record before us, it is apparent that the leasing arrangements contemplated the appellee, United States Leasing Corporation, EOS Leasing Division, to purchase the equipment selected by the lessee, Petroziello, from the vendor, Exxon Office Systems, on behalf of the lessee, Petroziello, and then enter into a term lease with Petroziello. This logically was designed to allow a customer to lease a large cost item at a minimum initial cost outlay.

On October 10, 1981, U. S. Leasing executed a lease with Petroziello calling for 36 payments of $128.16 for the lease of a Quip 2000 connection. The face of the lease showed Exxon Office Systems to be the vendor and was verified by Brown as a sales representative. The lease, as opposed to the sale, was executed by an officer of U. S. Leasing as lessor and Petroziello as lessee. The face of the lease likewise provided in the first three paragraphs of the lease: "1. NO WARRANTIES BY LESSOR. Lessee has selected the equipment to be supplied by Exxon Office Systems Company (Vendor) and has requested that lessor purchase the equipment. In connection with that purchase, vendor will make no warranties to lessor (except as to title) in respect of the equipment. Consequently, lessor makes no warranty, express or implied, as to any matter whatsoever (except for the right of quiet enjoyment if lessee is not in default hereunder) including the condition of equipment, its merchantability or its fitness for any particular purpose, and as to lessor lessee leases equipment as is.

"2. CLAIMS AGAINST VENDOR. Lessee has entered into an agreement with vendor covering the equipment (agreement). That agreement provides for lessee's remedies against vendor with respect to the equipment if the equipment is not properly installed, does not operate as represented or warranted by vendor or is otherwise unsat-

isfactory. Lessee shall make all claims on account thereof solely against vendor pursuant to the terms of that agreement and shall notwithstanding the existence of any such claim, pay lessor rent as provided herein.

"3. VENDOR NOT AN AGENT. Lessee understands and agrees that neither vendor nor any salesman or other agent of vendor is an agent of lessor. No salesman or agent of vendor is authorized to waive or alter any term or condition of this lease, and no representation as to equipment or any other matter by vendor shall in any way affect lessee's duty to pay the rent and perform its other obligations as set forth in this lease." Petroziello executed this lease apparently without question or reservation.

Representatives of the vendor appeared at Petroziello's place of business to install the equipment. It had been represented by Brown to be compatible with the bank's computer and designed to retrieve the information sought by Petroziello. However, at the time of installation, the equipment did not perform as promised, nor has it ever performed as promised. Petroziello made some payments on the lease to U. S. Leasing but when the equipment proved to continue to be useless for the purpose warranted, Petroziello refused further payments and tendered the equipment back to lessor U. S. Leasing (but not to the vendor Exxon Office Systems).

In due time, U. S. Leasing made demand upon Petroziello for delinquent lease rental payments and upon refusal brought suit against Petroziello for delinquent payments, attorney fees (provided for in the lease) and costs. Petroziello answered showing total lack of consideration, fraud in inducement, recission, and unconscionable terms in that U. S. Leasing insulated itself by the terms of the lease from all warranties. After discovery in which Petroziello admitted execution of the contract and failure to make additional payments and U. S. Leasing established there was no corporate linkage between Exxon Office Systems and the lessor, U. S. Leasing moved for summary judgment. The trial court granted U. S. Leasing its motion and it is that grant that forms the basis for this appeal. *Held*:

Petroziello complains that the saleswoman, Brown, did not indicate in any way that the vendor and the lessor were different entities. He further asserts that the facts show a complete lack of consideration in that the equipment was not fit at all for the purpose for which the lease was executed in spite of the fraudulent assertions amounting to an inducement by Ms. Brown. Thus, Petroziello urges that there are unresolved questions of fact pertaining to consideration and fraud as well as an unconscionable insulation by U. S. Leasing in the language of the lease itself.

As to all but the last contention, we are forced to conclude that the face of the lease itself clearly distinguished the three parties to

the agreement. There could be no mistaking the identification of the vendor as Exxon Office Systems, the lessor as U. S. Leasing and the lessee as Petroziello. The lease did not seek to deny to Petroziello the right to establish liability for defective equipment or improper representations or installation. It simply directed the user of the equipment to the seller of the equipment. There is no allegation that U. S. Leasing deluded Petroziello as to the terms of the lease or precluded him from reading it before he signed it.

All the contentions of Petroziello as to misrepresentation, unfitness and lack of consideration were proper allegations of defense as against the vendor, Exxon Office Systems. (It appears that Petroziello belatedly realized these rights in that with unknown results, he sought to join Exxon Office Systems as a third party defendant.) Petroziello contends that the lease is against public policy in that the lease insulates U. S. Leasing from warranties by terms within the lease. Yet it would be ludicrous to contend that he was not aware at the time of execution that no warranties were made and expressly did not extend from the manufacturer, Exxon Office Systems, to the lessor United States Leasing. Consequently, in the absence of warranties from the manufacturer to the purchaser-lessor, no such warranties were extended from the lessor to the lessee. There is nothing unlawful in such a lease stipulation and no reason suggests itself why a voluntary assumption of such a provision should not be binding on the parties.

In regard to Petroziello's argument that the lease's immunization of the lessor from any warranty was overly broad and against public policy, we observe this is not a *sale* such as would invoke an implied warranty of fitness for a particular purpose. See OCGA § 11-2-315. Provisions of this UCC section are not applicable to commercial chattel leases. *Redfern Meats v. Hertz Corp.*, 134 Ga. App. 381, 388 (215 SE2d 10). It is well-settled contract law that the parties are free to contract about any subject matter, on any terms, unless prohibited by statute or public policy (*Porubiansky v. Emory Univ.*, 156 Ga. App. 602, 603 (275 SE2d 163), aff'd 248 Ga. 391), and, a lessor may exculpate his liability with a disclaimer clause, as in the instant case, so long as such restrictions are expressed in clear and unambiguous language. *Hall v. Skate Escape*, 171 Ga. App. 178, 179-180 (319 SE2d 67). *Porubiansky*, supra, p. 603. The provisions of this lease are not prohibited by law or public policy, as no injury to the public interest clearly appears. *Emory Univ. v. Porubiansky*, 248 Ga. 391, 393 (282 SE2d 903). A person may waive or renounce what the law has established in his favor. OCGA § 1-3-7; *Daniel v. Daniel*, 250 Ga. 849, 851 (301 SE2d 643). Here, the lessee clearly renounced any contractual right of fitness of the chattel for a particular purpose.

It is the duty of the trial court to construe a contract unless it is

ambiguous, in which case parol evidence may be allowed for the purpose of ascertaining the intention of the parties. *Taylor Freezer Sales Co. v. Hydrick*, 138 Ga. App. 738, 739 (227 SE2d 494). However, courts are not at liberty to revise a contract while professing to construe it. *Smith v. Standard Oil Co.*, 227 Ga. 268 (1) (180 SE2d 691); *Stuckey v. Kahn*, 140 Ga. App. 602, 606 (231 SE2d 565). There is no construction required or even permissible when the language employed by the parties in the contract is plain, unambiguous and capable of only one reasonable interpretation. *Benefield v. Malone*, 112 Ga. App. 408 (145 SE2d 732). Nor is parol evidence admissible to contradict or construe an unambiguous contract. *R. S. Helms, Inc. v. GST Dev. Co.*, 135 Ga. App. 845 (219 SE2d 458).

The express, clear and unambiguous terms of this lease placed Petroziello on notice at the time he signed it that representations by vendors, its salespersons, or agents would not bind the lessor. Warranties as to the leased equipment were not given by the vendor to the lessor and thus warranties could not be extended to the lessee by the lessor. All complaints and redress for breach of warranty or misrepresentations were to be directed to and against the vendor. Thus, the very complaints made by Petroziello in his defenses as to the lessor were expressly covered and excluded in the terms of the lease in clear and unambiguous terms.

The summary judgment procedure is designed to give the opposing party fair opportunity to contradict the supporting material relied upon by the moving party. In this case not only did Petroziello not contradict the assertions of the execution of a valid lease and default thereof, but the only denials of liability were directed toward a party not before the court. One of the cardinal rules of the summary judgment procedure is that the court can only look to see if there is a contested issue of fact. *Bagley v. Firestone Tire &c. Co.*, 104 Ga. App. 736, 739 (123 SE2d 179). The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact and if the trial court is presented with no choice from the facts except that offered by the movant, then the movant is entitled to summary judgment as a matter of law. *Holland v. Sanfax Corp.*, 106 Ga. App. 1 (126 SE2d 442). We find this to be the situation in the instant case.

*Judgment affirmed. Carley and Sognier, JJ., concur.*

DECIDED NOVEMBER 15, 1985.

*Carl A. Adcock*, for appellant.
*Therese L. Glisson*, for appellee.