A90A2288. MERCEDES-BENZ CREDIT CORPORATION v.
SHIELDS.
(403 SE2d 891)

COOPER, Judge.

On January 27, 1984, appellee entered into an agreement with appellant for the lease of a 1984 Mercedes-Benz, imported, sold and warranted by Mercedes-Benz of North America, Inc. ("MBNA"). The evidence is undisputed that over the course of the lease, appellee developed an inconsistent payment history, repeatedly falling behind and having to catch up past due payments months at a time, each missed payment constituting a default under the lease. Moreover, for a time, appellee's insurance was cancelled for non-payment, also a default under the lease. In a modification letter, appellee declared that the car would be primarily used for personal, family or household purposes. However, Ralph McClure ("McClure"), a real estate agent in appellee's employ, admitted using the car "95% of the time" to show properties and in performance of his duties as "office manager" of appellee's real estate business. In March 1985, while driving the car, McClure detected the smell of gasoline. He opened the trunk and discovered gasoline floating in the trunk, one quarter of an inch deep. The car was returned to the original dealership, in accordance with the lease, where repair technicians discovered that the underside was thickly covered with a large amount of mud and dirt, in a quantity never before seen on a car and so thick it could be chiseled away in huge chunks with a screwdriver. Cakes of mud were also in the engine compartment. The car had to be cleaned before the source of the problem could be determined. The charcoal canister located under the hood, which ventilated the gas tank, was clogged with mud resulting in a build up of pressure in the tank causing the tank to rupture. The canister and the gas tank were replaced under the warranty at no cost to appellee. Two weeks later, the car was brought back, heavily encrusted with mud, with the same problem. The car was cleaned, and the tank and canister were again replaced at no cost to appellee. After another two weeks the car was again returned for repair, the ventilation system blocked with mud. The car was repaired; however, appellee never returned for the car and did not make the April payment on the lease. Appellee made no further payments on the lease. Appellant repossessed the car from the dealership. It was sold at an auto auction, and the proceeds of the sale were applied to appellee's balance due under the lease. Subsequently, appellant brought this action to recover the deficiency. Appellee answered the complaint and brought a third-party action against MBNA for failure to repair the car. The third-party complaint was dismissed before the trial commenced. At the close of appellee's case, appellant moved for a directed verdict, and the motion was denied. The jury returned a ver-

dict for appellee. The trial court's entry of a judgment on the verdict was followed by appellant's motion for j.n.o.v. or a new trial. The court denied the motion, and this appeal followed, appellant enumerating as error the denial of its motions for a directed verdict, j.n.o.v. and a new trial.

The evidence is undisputed that the lease signed by appellee listed appellant as lessor of the vehicle, that the vehicle was provided to appellee, and that contrary to the lease agreement, appellee stopped making payments to appellant. "Therefore, the issue presented for resolution is whether [appellee] produced sufficient evidence to create a jury question as to the existence of any viable defense to [his] obligation to appellant under the lease agreement. If [he] did, the trial court did not err in denying appellant's motion for a directed verdict. If [appellee] did not produce such evidence, the trial court erred in failing to grant a directed verdict in favor of appellant." *Citicorp Industrial Credit v. Rountree*, 185 Ga. App. 417 (1) (364 SE2d 65) (1987).

Appellee relied on OCGA § 44-12-63 (3), as a defense to his suspension of payments on the lease, which requires a bailor, such as appellant, "[t]o warrant the right of possession and that the thing bailed is free from any secret fault rendering it unfit for the purposes for which it is hired." Appellee contended that the "flooding of gasoline in the trunk area" was a secret fault and that a representation by a mechanic that the car could not be repaired justified his action. However, the lease agreement provided that appellee acknowledged that appellant "[made] no express warranties regarding the vehicle as to its condition, merchantability or fitness for use, that [appellant] disclaim[ed] any implied warranties, and that [appellee was] leasing [the vehicle] from [appellant] 'as is.' " The agreement also stated that "[t]he monthly rent shall be paid for the full term of the lease without notice or demand and without setoff, counterclaim, reduction, abatement, suspension, deferment or any other defense because of the disappearance, theft, destruction, levy, judicial seizure or *unsatisfactory performance* of the vehicle or for any other reason whatever, unless this lease is terminated under an express provision of this agreement." (Emphasis supplied.) " '[P]arties are free to contract and may by express agreement enlarge, abridge, qualify, or supersede obligations that otherwise would arise from the bailment by implication of law — so long as the contract does not violate statutory law or contravene public policy — and, so long as such restrictions are expressed in clear and unambiguous language.' [Cit.]" Id. at 422. "A contract cannot be said to be contrary to public policy unless the General Assembly has declared it to be so, or unless the consideration of the contract is entered into for the purpose of effecting an illegal or immoral agreement or doing something which is in violation of law. [Cits.]

*Hall v. Gardens Svcs.*, 174 Ga. App. 856, 857 (332 SE2d 3) (1985). A contract in which a lessor or bailor exculpates himself from liability with a disclaimer clause, as in the instant case, is not prohibited by law or public policy. *Petroziello v. U. S. Leasing Corp.*, 176 Ga. App. 858, 860 (338 SE2d 63) (1985). Moreover, the disclaimer and abatement clauses were "explicit, prominent, clear and unambiguous," evidencing an intentional waiver of the statutory warranties of OCGA § 44-12-63. See *Hall v. Skate Escape*, 171 Ga. App. 178, 180 (319 SE2d 67) (1984). "Thus, as a matter of law, [appellee] [had] no viable claim for the breach of those warranties. It follows that the trial court erred in failing to direct a verdict in favor of appellant. . . ." *Citicorp*, supra at 423. Based on the foregoing we need not consider appellant's second contention that a directed verdict or j.n.o.v. should have been granted because appellee failed to offer sufficient evidence of a "secret fault."

*Judgment reversed. Banke, P. J., and Birdsong, P. J., concur.*

DECIDED MARCH 14, 1991.

*John H. Watson*, for appellant.
*Horne & Rice, M. Barton Rice, Jr.*, for appellee.