A95A0990. MONROE et al. v. SAVANNAH ELECTRIC & POWER COMPANY.

(465 SE2d 508)

McMURRAY, Presiding Judge.

Tamarah Marie Monroe, individually, as surviving spouse of Scott Clayton Ussery, deceased, and as permanent administratrix of the estate of Scott Clayton Ussery (plaintiff) brought an action against Savannah Electric & Power Company ("Savannah Electric"), alleging that defects in Savannah Electric's power transmission system resulted in fatal wounds to Scott Clayton Ussery when a boat he was towing contacted an overhead power line. Plaintiff seeks recovery based on theories of negligence and strict liability, asserting that the substandard electrical transmission facilities delivered "a defective electrical product and service generated and manufactured . . . for sale by [Savannah Electric]." The parties later filed opposing motions for partial summary judgment, seeking a determination of Savannah Electric's liability under Georgia's strict liability statute, OCGA § 51-1-11 (b) (1). This Code subsection provides that a manufacturer shall

be liable in tort for injuries caused by defective personal property "sold" as new in Georgia.

Savannah Electric does not dispute that the fatal incident occurred while Scott Clayton Ussery was towing a boat along an access road to a commercial boat-docking facility known as Walsh's Dock; that one of the boat's stanchions contacted the power line servicing Walsh's Dock and that electricity from this power line grounded through Scott Clayton Ussery's body when he stepped from his truck (apparently) to investigate. The utility, however, relies on undisputed proof that Scott Clayton Ussery was killed by electricity that had not yet passed through the electric power meter at Walsh's Dock, arguing that OCGA § 51-11-1 (b) (1) does not apply since this energy had not been "sold" at the time of the fatal incident. See *Robert F. Bullock, Inc. v. Thorpe*, 256 Ga. 744, 745 (353 SE2d 340). Plaintiff countered by filing the affidavit of an expert who deposed that before the fatal current struck Scott Clayton Ussery, it flowed through the power transformer that was (apparently) just above the electric meter at Walsh's Dock. This expert also deposed that Scott Clayton Ussery's injuries were the result of substandard grounding, clearance and fusing of the overhead power line leading to Walsh's Dock.

The trial court agreed with Savannah Electric, concluding that, even if "the electricity that killed [Scott Clayton Ussery] was . . . a product, it was not 'sold' within the meaning of [OCGA § 51-1-11 (b) (1)] because it had not passed through the meter [at Walsh's Dock]." The trial court also found that "[a]ny [strict liability] claims regarding the construction, design, etc., of the poles, transformers, and other pieces of equipment are barred by the statute of repose [imposed by OCGA § 51-1-11 (b) (2)]." This appeal followed from the trial court's orders denying plaintiff's motion for partial summary judgment and granting Savannah Electric's motion for partial summary judgment. *Held*:

The Courts of Georgia have not addressed the possible application of strict liability, under OCGA § 51-1-11 (b) (1), to a supplier of electricity. This Code subsection provides for strict liability with respect to the manufacturer of personal property sold as new. The first question we must answer, then, is whether electrical power is a product (rather than a service) within the meaning of this Code subsection. Other jurisdictions have held that electricity may constitute a "product" for purposes of imposing strict tort liability under Restatement of the Law, Second, Torts § 402A, pp. 347-348. See American Law of Products Liability 3d, § 117:2. The reasoning is that, while distribution of electricity may be a service, the electricity itself (like other products) can be manufactured, confined, controlled, transmitted and distributed in the stream of commerce. *Ransome v. Wisconsin Elec. Power Co.*, 275 NW2d 641, 643 (1979). We agree with such

logic, but clarify that electricity may only be considered a product within the meaning of Georgia's strict liability statute when it has been "sold" or placed in the stream of commerce, i.e., the utility has placed the electricity in the hands of and under the control of a consumer. See *Robert F. Bullock, Inc. v. Thorpe*, 256 Ga. 744, 745, supra. Consequently, the controlling issue in the present appeal is whether Walsh's Dock had possession of and control over the current that killed Scott Clayton Ussery. See *Pierce v. Pacific Gas &c. Co.*, 212 Cal. Rptr. 283, 290 (1985); *Schriner v. Pennsylvania Power &c. Co.*, 501 A2d 1128, 1133 (1985).

Plaintiff contends the fatal electricity was "sold" to Walsh's Dock before it entered Scott Clayton Ussery's body because it "had been delivered to the consumer's property for use." She also argues that the passage of electricity through the meter at Walsh's Dock has no bearing on whether the electricity was "sold" within the meaning of OCGA § 51-1-11 (b) (1), reasoning that "electricity is present on both sides of a Meter at all times, and that when electricity is used by the consumer on the consumer's side of the Meter the amount of electricity used, which is already on the consumer's side of the Meter, is only measured by the Meter."

The fact that Scott Clayton Ussery was electrocuted at Walsh's Dock via contact with an overhead power line dedicated solely to the transmission of electricity to that business does not establish that the current which grounded through Scott Clayton Ussery's body was in the hands of and under the control of Walsh's Dock. Further, plaintiff's proof that the fatal current looped or flowed through the transformer at Walsh's Dock before it hit Scott Clayton Ussery sheds no light on whether the customer had access to or control over the voltage. Indeed, neither Savannah Electric nor plaintiff has offered conclusive proof regarding the point at which the fatal current was actually "sold" to or placed in the possession and control of Walsh's Dock. This is not surprising, however, since other jurisdictions have struggled over technical proof regarding the point at which electricity is actually "sold" to a consumer, for purposes of measuring strict tort liability. See American Law of Products Liability 3d, § 117:2. Some jurisdictions adopt the view that electricity is not placed in the stream of commerce until it passes through a customer's electric meter, i.e., the point where charges are customarily computed. *Ransome v. Wisconsin Elec. Power Co.*, 275 NW2d 641, 649, supra; *Schriner v. Pennsylvania Power &c. Co.*, 501 A2d 1128, 1134, supra. Other jurisdictions refuse to embrace such an inflexible rule, recognizing that "the many variations in electrical systems prevent . . . drawing [such] a 'bright line' at a particular point." *Pierce v. Pacific Gas &c. Co.*, 212 Cal. Rptr. 283, 292, supra. See *Aversa v. Public Svc. Elec. &c. Co.*, 451 A2d 976, 980 (1982). The circumstances of the case sub

judice do not require a commitment to either view. It is sufficient for us to say that electricity is a product or "personal property sold as new property" under OCGA § 51-1-11 (b) (1) when it is in the hands of and under the control of the consumer, intended to be available to the customer at a useable voltage. See *Pierce v. Pacific Gas &c. Co.*, 212 Cal. Rptr. 283, 292, supra. In other words, we hold that contact with high voltage transmission lines does not generally fall within the purview of strict tort liability, at least in the context of an electrical provider's liability as set out in OCGA § 51-1-11 (b) (1). See *Houston Lighting &c. Co. v. Reynolds*, 765 SW2d 784, 785 (1989).

In the case sub judice, there is no proof that Scott Clayton Ussery was electrocuted at a point where electricity was intended to be available for immediate use at Walsh's Dock. Plaintiff merely alleged that Scott Clayton Ussery was killed after the boat he was towing came in contact with a "7,620 Volt High Tension Wire leading to Walsh's Dock. . . ." And even though plaintiff's expert deposed that Scott Clayton Ussery was hit by electricity that had looped or flowed through the power transformer at Walsh's Dock, he does not say that the fatal current was transformed or that it should have been transformed to a useable voltage at the time it hit Scott Clayton Ussery. Consequently, since there appears to be no question that Scott Clayton Ussery was killed by energy that was not transformed or intended to be transformed for use at Walsh's Dock, we find no basis of support for plaintiff's claim under OCGA § 51-1-11 (b) (1). Accordingly, the trial court did not err in denying plaintiff's motion for partial summary judgment and granting Savannah Electric's motion for partial summary judgment. Plaintiff must therefore proceed on the remaining negligence claims.

*Judgment affirmed. Andrews and Blackburn, JJ., concur in the judgment only.*

DECIDED DECEMBER 4, 1995 —
RECONSIDERATION DENIED DECEMBER 14, 1995 —

*Bergen & Bergen, Joseph B. Bergen, Frederick S. Bergen*, for appellants.

*Bouhan, Williams & Levy, Walter C. Hartridge, Carlton E. Joyce*, for appellee.

*Phillips & Reid, Charles T. Autry, Brendan F. Flanagan*, amici curiae.