## A97A2562. PERTON et al. v. MOTEL PROPERTIES, INC.

(497 SE2d 29)

ELDRIDGE, Judge.

On February 7, 1994, appellee-defendant Motel Properties, Inc. d/b/a Comfort Inn ("Motel Properties") rented to Selma Perton and Irwin Perton, appellants-plaintiffs, two bicycles for their use. After riding her bicycle for a short distance, Mrs. Perton felt that something was wrong with the bicycle. On inspection of the bicycle, neither of the Pertons could find any patent defect. However, Mrs. Perton decided to return the bicycle. During the return trip, the bicycle suddenly and completely malfunctioned and threw Mrs. Perton to the ground, causing her serious injury.

The plaintiffs sued the defendant for negligently maintaining, renting, and inspecting the bicycle and renting to Mrs. Perton a defective bicycle.

On deposition, Mrs. Perton testified that, in her opinion, the front wheel seemed wobbly and the brakes were not good. She stated that when she went to return the bicycle, she did not know that it was unsafe, but that she felt uncomfortable with the bicycle and decided to return it.

Sammie Yawn, who rented the bicycles to the plaintiffs for the defendant, testified that he made a daily visual inspection of the bicycles, but made no manual testing or operational inspection. He discovered no defects in his cursory visual inspection.

The defendant moved for and was granted summary judgment. Plaintiffs filed their timely notice of appeal.

Plaintiffs set forth their enumerations of error on two grounds, which both assert that the trial court erred as a matter of law in granting summary judgment on the issue of negligence. We agree.

(a) The first matter that must be dealt with in this analysis is the determination of the legal effect of OCGA § 44-12-63 as to the legal duties imposed upon a bailor. Motel Properties, in renting the bicycle, acted as a bailor for hire. *Heughan v. State*, 82 Ga. App. 640 (61 SE2d 685) (1950). OCGA § 44-12-63 sets forth the obligations imposed by law arising from such legal relationship. "The obligations of the bailor of things are: (1) To do no act to deprive the hirer of the use and enjoyment of the chattel during the period of the bailment; (2) To keep the thing in suitable order and repair for the purposes of the bailment; and (3) To warrant the right of possession and that the thing bailed is free from any secret fault rendering it unfit for the purposes for which it is hired." OCGA § 44-12-63; see *Mark Singleton Buick, Inc. v. Taylor*, 194 Ga. App. 630 (391 SE2d 435) (1990); see also *Brannan & Holder v. Moore*, 135 Ga. 517, 519 (69 SE 820) (1910).

The bailor's liability for defective rented property arises partly from an implied warranty created by the legal relationship alone and

partly as a breach of the common law duties in negligence owed to the public in general. *Seaboard Coast Line R. v. Mobil Chem. Co.*, 172 Ga. App. 543 (323 SE2d 849) (1984); see *Southeastern Air Svc. v. Crowell*, 88 Ga. App. 820 (78 SE2d 103) (1953). Thus, the relationship of bailor-bailee causes certain duties of the exercise of ordinary care to arise that are greater than are owed to the general public. See *Yale & Towne, Inc. v. Sharpe*, 118 Ga. App. 480 (164 SE2d 318) (1968); *Hertz Driv-Ur-Self &c. v. Benson*, 83 Ga. App. 866, 873-875 (3) (65 SE2d 191) (1951).

(b) To determine what duties of ordinary care are owed in negligence, it must be determined what effect legally imposed warranties have. Breach of implied warranty arises from the relationship of bailor-bailee when the rental property is defective, because the bailor warrants that the property is free of hidden defects and fit for the purposes for which it is hired. See *Heyde v. Xtraman, Inc.*, 199 Ga. App. 303, 305 (404 SE2d 607) (1991); *Hall v. Gardens Svcs.*, 174 Ga. App. 856, 858 (332 SE2d 3) (1985); *Redfern Meats v. Hertz Corp.*, 134 Ga. App. 381, 384 (215 SE2d 10) (1975); *Southern Protective Products Co. v. Leasing Intl.*, 134 Ga. App. 945, 946-948 (3) (216 SE2d 725) (1975); *Cooper v. Layson Bros.*, 14 Ga. App. 134, hn. 2 (80 SE 666) (1914). While the bailor warrants that the rental property is free from latent defects, the bailor at the same time impliedly warrants that the property is free from patent defects as well, because the existence of a patent defect renders the property unfit and unsuitable for the purpose for which it was rented, which violates the express language of the statute as to warranty of fitness. *Brannan & Holder v. Moore*, supra at 518-519; *Queen v. Patent Scaffolding Co.*, 46 Ga. App. 364 (167 SE 789) (1933); *Parker v. Loving & Co.*, 13 Ga. App. 284 (79 SE 77) (1913); see also *Southern Protective Products Co. v. Leasing Intl.*, supra at 948; *Hall v. Gardens Svcs.*, supra at 858; *Hertz Driv-Ur-Self &c. v. Benson*, supra at 874.

Georgia law has interpreted the breach of a statutorily imposed warranty, whether express or implied, as giving rise to strict liability. "Whether it be tort or contract, a breach of warranty gives rise to strict liability, which does not depend upon any knowledge of defects on the part of the [bailee], or any negligence." (Punctuation omitted.) *John Deere Co. v. Lindsey Landclearing Co.*, 122 Ga. App. 827, 831 (2) (178 SE2d 917) (1970); see also *Pierce v. Liberty Furniture Co.*, 141 Ga. App. 175, 177 (3) (233 SE2d 33) (1977).[1]

---

[1] While these cases arose out of sales under the UCC, OCGA § 11-2-314, imposing implied warranties of fitness as a matter of law and arising from a sales relationship, these cases also explain the legal effect of a breach of warranty of fitness in the same fashion in which OCGA § 44-12-63 gives rise to an implied warranty of fitness. Under OCGA § 51-1-11, strict product liability in tort was recognized to arise from the statutory language of implied

While the statute imposes warranties that arise out of such legal relationship of bailor-bailee, the bailee by express contract provisions can limit or waive such protection, not only in warranty but also in tort. *Benford v. RDL, Inc.*, 223 Ga. App. 800 (479 SE2d 110) (1996); *Lightsey v. Nalley Equip. Leasing*, 209 Ga. App. 73 (432 SE2d 673) (1993); *Mercedes-Benz Credit Corp. v. Shields*, 199 Ga. App. 89 (403 SE2d 891) (1991); *Petroziello v. U. S. Leasing Corp. &c.*, 176 Ga. App. 858 (338 SE2d 63) (1985); *Hall v. Gardens Svcs.*, supra. However, a contract exclusion or exculpatory clause which is contrary to public policy is void. *Mark Singleton Buick, Inc. v. Taylor*, supra at 632; *Hall v. Gardens Svcs.*, supra at 857-858.

As a matter of law, the trial court erred in finding that strict liability did not apply.

(c) The bailor has several duties imposed by statute, which give rise to negligence upon breach of such duties. The bailor must exercise ordinary care to inspect and ascertain that the rental property has no hidden defects that would render it dangerous. *Hertz Driv-Ur-Self &c. v. Benson*, supra; see also *Yale & Towne, Inc. v. Sharpe*, supra; *Parker v. Loving & Co.*, supra. The statute imposes a duty to properly care for, to inspect, and to maintain the property in a defect-free condition prior to rental. OCGA § 44-12-63 (2).

---

warranty imposed as a matter of law upon the manufacturer of new personal property. *Center Chem. Co. v. Parzini*, 234 Ga. 868 (218 SE2d 580) (1975). When the manufacturer of a new product places the product on a trial basis as a bailment with the hope of ultimate sale, such was held to be subject to strict liability under OCGA § 51-1-11. *Robert F. Bullock, Inc. v. Thorpe*, 256 Ga. 744, 745 (353 SE2d 340) (1987). Strict liability does arise from a rental or lease agreement in a fashion similar to a sale. *Redfern Meats v. Hertz Corp.*, supra; *Southern Protective Products Co. v. Leasing Intl.*, supra. See also McIntosh, Ga. Products Liability, §§ 3-2; 3-3; 3-5; pp. 104-110. "Definition of 'One Who Sells or Otherwise Distributes' — For purposes of this Restatement: . . . (b) One otherwise distributes a product when, in a commercial transaction other than a sale, one provides the product to another either for use . . . Commercial nonsale product distributors include, but are not limited to, lessors, bailors . . . Comment f. *Other means of commercial distribution: product bailments.* Bailments typically involve short-term transfers of possession. Several categories of cases are fairly clear. . . . Even when a sale of a product is not contemplated, the commercial bailor is subject to strict liability if a charge is imposed as a condition of the bailment. Thus, a laundromat is subject to strict liability for a defective clothes dryer, and a roller rink that rents skates is treated similarly." Torts, Products Liability, Restatement 3rd, § 20, p. 358. See Reporters' Notes: *First Nat. Bank of Mobile v. Cessna Aircraft Co.*, 365 S2d 966 (Ala. 1978); *Robert F. Bullock, Inc. v. Thorpe*, supra; *Delaney v. Towmotor Corp.*, 339 F2d 4 (2nd Cir. 1964) (when product demonstrated for purpose of sale); *Garcia v. Halsett*, 82 Cal. Rptr. 420, 423 (Cal. App. 1970) (when no sale contemplated and rental only); *Golt v. Sports Complex*, 644 A2d 989 (Del. Super. Ct. 1994). See contra *Seaboard Coast Line R. v. Mobil Chem. Co.*, supra at 546, wherein this Court held that neither OCGA § 11-2-314 nor § 51-1-11 applied when there was no sale or the substantial equivalent of a sale; however, the opinion did not consider the issue in this case, i.e., that such statutes could be used to interpret the statutory intent of OCGA § 44-12-63 when it uses the same term "warranty," not in a sales setting, but in a bailment for hire setting. See also *Monroe v. Savannah Elec. &c. Co.*, 219 Ga. App. 460 (465 SE2d 508) (1995), wherein this Court has restricted the application of OCGA § 51-1-11 (b) to products that have been sold.

"[D]ue care on the part of the bailor requires him to examine the thing bailed for the purpose of seeing that it has no hidden defects which would render it unsuitable for the purposes for which it was hired." (Punctuation omitted.) *Hertz Driv-Ur-Self &c. v. Benson*, supra at 874; accord *Southeastern Air Svc. v. Crowell*, supra at 823; *Parker v. Loving & Co.*, supra. "[A] bailor . . . is liable for any injury or damage which results from a latent defect of which the bailee has no knowledge and the consequences of which he could not avoid through the exercise of ordinary care. . . . Thus, it is essential that a bailor use ordinary care to inspect the bailed article before delivery to ascertain if it was in a reasonably safe condition to avoid injury to another." *Hall v. Skate Escape, Ltd.*, 171 Ga. App. 178, 179 (319 SE2d 67) (1984); accord *Yale & Towne, Inc. v. Sharpe*, supra at 491; see also *Queen v. Patent Scaffolding Co.*, supra at 368; *Hertz Driv-Ur-Self &c. v. Benson*, supra at 874; *Parker v. Loving & Co.*, supra at 286.

"It was the duty of the defendant to deliver the [rental property] in such a condition that [plaintiff] could use it with safety." *Queen v. Patent Scaffolding Co.*, supra at 368; see also *Savannah, Fla. &c. R. Co. v. Booth*, 98 Ga. 20, 23-24 (25 SE 928) (1895). "The plaintiff makes out [her] case by showing the injury and that the defendant was lacking in ordinary care, in furnishing [defective rental property] unsuited for the purposes for which it was hired. Negligence is not presumed, and must affirmatively appear from the plaintiff's proof." *Cooper v. Layson Bros.*, supra at 135-136; OCGA § 9-11-56 (e). Plaintiff has produced such evidence in response to the motion for summary judgment. OCGA § 9-11-56 (e).

A bailor, as a matter of law, is presumed to have constructive knowledge of all defects that a reasonable inspection would reveal in the exercise of ordinary care, because the bailor is under a statutory duty to inspect for both patent and latent defects prior to renting the property. *Parker v. Loving & Co.*, supra at 286; see also *Savannah, Fla. &c. R. Co. v. Booth*, supra at 23-24. The amount of care that the bailor should exercise in discovering a defect is a factual question for the jury. *Hertz Driv-Ur-Self &c. v. Benson*, supra.

The evidence in this case is that the bicycle had a latent defect at the time that Motel Properties rented the bicycle, which it failed to discover on a cursory inspection. Motel Properties violated its statutory duties in (1) failing to maintain the bicycle in a fit condition to rent, (2) failing to inspect and to discover the latent defect prior to renting the bicycle, and (3) renting the bicycle in a dangerous condition so that it was not fit for the purpose for which it was rented. The evidence raises factual issues for the jury that such acts or omissions on the part of Motel Properties occurred prior to the rental.

(d) If the plaintiff discovers or should have discovered the existence of a patent defect through the exercise of ordinary care, then

such failure to exercise ordinary care for her own safety may insulate the bailor from liability in negligence, because the failure to avoid the danger is the proximate cause of the injury. *Parker v. Loving & Co.*, supra at 286; *Queen v. Patent Scaffolding Co.*, supra. The amount of care that a bailee-plaintiff ought to have exercised to discover a patent defect is a jury question. *Parker v. Loving & Co.*, supra at 286.

"[K]nowledge of [a] defect should not be confused with knowledge of danger. [Cit.]" (Punctuation omitted.) *Rich's, Inc. v. Townsend*, 94 Ga. App. 761, 766 (96 SE2d 332) (1956); accord *Mathis v. Gazan*, 51 Ga. App. 805, 808 (181 SE 503) (1935). "[O]rdinarily, knowledge of a defect is not necessarily knowledge of danger inherent in the defect." (Punctuation omitted.) *Pritchett v. Hartwell Entertainment Group*, 221 Ga. App. 708, 709 (472 SE2d 512) (1996); accord *Soto v. Roswell Townhomes*, 183 Ga. App. 286, 287 (358 SE2d 670) (1987); see also *Wade v. Roberts*, 118 Ga. App. 284 (163 SE2d 343) (1968).

However, the evidence showed that this was a latent defect in the bicycle that Motel Properties failed to discover upon its cursory inspection immediately prior to rental. The plaintiff felt that something was "wrong" with the bicycle, but an uneasy feeling is not actual knowledge of a latent defect. Neither she nor her husband, upon the exercise of a manual and visual inspection, could detect any patent or latent defect. She had no awareness of a specific danger nor an appreciation of the risk that, if the bicycle malfunctioned while she was riding it, she could be thrown to the ground. Therefore, the plaintiffs produced evidence of lack of knowledge and of appreciation of the danger, as well as of the exercise of ordinary care, which showing created material issues of fact on summary judgment as to the affirmative defense of contributory negligence.

(e) Plaintiff made an inspection and, finding no defect, remounted the bicycle, which she rode until she was injured. Such facts do not constitute an assumption of the risk as a matter of law.

The Supreme Court in *Vaughn v. Pleasent*, 266 Ga. 862, 863 (471 SE2d 866) (1996), held that before the affirmative defense of assumption of the risk can bar recovery, there must be evidence that "the plaintiff had *actual* knowledge of the dangerous situation that resulted in [her] injury, and an appreciation of the risks associated with that dangerous situation." (Emphasis supplied.) "The affirmative defense of assumption of the risk bars a plaintiff from recovering on a negligence claim if it is established that [she,] without coercion of circumstances, chooses a course of action with full knowledge of its danger and while exercising a free choice as to whether to engage in the act or not. In Georgia, a defendant asserting an assumption of the risk defense must establish that the plaintiff (1) had actual knowledge of the danger; (2) understood and appreciated the risks associated with such danger; and (3) voluntarily exposed [herself] to

those risks. Knowledge of the risk is the watchword of assumption of [the] risk, and means both *actual* and *subjective* knowledge on the plaintiff's part. The knowledge that a plaintiff who assumes a risk must subjectively possess is that of the specific, particular risk of harm associated with the activity or condition that proximately causes injury. The knowledge requirement does not refer to a plaintiff's comprehension of general, non-specific risks that might be associated with such conditions or activities." (Citations, punctuation and footnotes omitted; emphasis in original.) Id. at 864; see also *Smith v. Mangram*, 222 Ga. App. 585, 586 (474 SE2d 758) (1996); *York v. Winn-Dixie Atlanta*, 217 Ga. App. 839 (459 SE2d 470) (1995); *Turner v. Sumter Self Storage Co.*, 215 Ga. App. 92, 94-95 (3) (449 SE2d 618) (1994).

"As a general rule, whether a party assumed the risk of [her] injury is an issue for the jury that should not be decided by summary judgment unless the defense is conclusively established by plain, palpable and undisputed evidence. *Taft v. Taft*, 209 Ga. App. 499, 500 (433 SE2d 667) [(1993)]." *Turner v. Sumter Self Storage Co.*, supra at 94 (3). This is not such a case.

In this case, plaintiff was not aware of a specific danger or defect. *Seibers v. Dixie Speedway*, 220 Ga. App. 811, 813 (3) (470 SE2d 452) (1996); *Turner v. Sumter Self Storage Co.*, supra at 94. While Motel Properties, at trial, may be able to prove this affirmative defense, it has failed to prove the essential elements of the defense to impose the bar as a matter of law on motion for summary judgment. The trial court erred in granting summary judgment on either assumption of risk, contributory negligence, or negligence.

*Judgment reversed. Birdsong, P. J., concurs specially. Ruffin, J., concurs in the judgment only.*

BIRDSONG, Presiding Judge, concurring specially.

Although I agree that summary judgment was not warranted in this case, I write separately to address paragraph (a) of the majority opinion because the issue of strict liability is not properly before this Court since the Pertons' response to Motel Properties' memorandum of law withdrew this cause of action from their complaint: "2. *Strict Liability — Count III*. Plaintiff withdraws this Count as a cause of action." Therefore, the trial court was without authority to rule on the validity of strict liability as a cause of action in this case, and review of the trial court's order shows that it did not rule on that issue: The lower court merely stated that, "[i]n its motion, the defendant showed the Court that the doctrine of res ipsa loquitur is not applicable to this case [cit.], and that Georgia law does not provide for strict liability in a case such as this. [Cit.]" This statement is a narrative of the posture of the case, and examination of the entire

order shows it did not constitute a ruling on the merits of strict liability as a cause of action. Consequently, as this issue was not ruled upon by the trial court, it is not ripe for appellate review. *Devins v. Leafmore Forest Condo. Assn. &c.,* 200 Ga. App. 158, 159 (3) (407 SE2d 76). "[T]his court does not render advisory opinions." *Chambers v. State,* 204 Ga. App. 396 (420 SE2d 393).

Further, the Pertons enumerated as error only that the trial court erred by deciding as a matter of law that Mrs. Perton had superior knowledge of the defective condition of the bicycle and that the trial court erred by deciding as a matter of law that she assumed the risk. Thus, no issue concerning strict liability is properly before this Court. This Court's function is to correct errors of law of which the parties complain, and our responsibility does not reach reviewing the record and sua sponte raising and deciding issues not raised by the parties. Ga. Const. of 1983, Art. VI, Sec. V, Par. III; *Tandy Corp. v. McCrimmon,* 183 Ga. App. 744, 746 (3) (360 SE2d 70). Accordingly, we have no jurisdiction to give advisory opinions on the matters discussed in paragraph (a) of the majority opinion.

Nevertheless, as I agree that the evidence is not conclusive that Mrs. Perton had actual knowledge of the danger associated with continuing to ride the bicycle and understood and appreciated the risks associated with the danger (see *Vaughn v. Pleasent,* 266 Ga. 862 (471 SE2d 866)), I concur with reversing the grant of summary judgment to Motel Properties.

DECIDED FEBRUARY 11, 1998.

*Zipperer & Lorberbaum, Steven L. Beauvais, Eric R. Gotwalt,* for appellants.

*Woodall & Mackenzie, John T. Woodall, Peter A. Giusti,* for appellee.